THE BRANDI LAW FIRM
THOMAS J. BRANDI (CA Bar No. 53208)
BRIAN J. MALLOY (CA Bar No. 234882)
354 Pine Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 989-1800
Facsimile: (415) 707-2024
Email: tjb@brandilaw.com

HOBAN & FEOLA, LLC
DAVID C. FEOLA* (CO Bar No. 18789)
34523 Upper Bear Creek Road
Evergreen, Colorado 80439
Phone: 303-674-7000, Ext. 2
Facsimile: 303-382-4685
Email: David@Feolalaw.com

* *Pro hac vice application to be filed*

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE L. CAMPANELLI on his own behalf and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>IMAGE FIRST UNIFORM RENTAL SERVICE, INC.; IMAGE FIRST HEALTHCARE LAUNDRY SPECIALISTS, INC.; IMAGE FIRST OF CALIFORNIA, LLC,<br><br>      Defendants. | Case No.:<br><br>**COLLECTIVE AND CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

1.     Plaintiff Kyle L. Campanelli ("Plaintiff" or "Campanelli") complains as follows against Defendants ImageFIRST Uniform Rental Service, Inc., ImageFIRST Healthcare Laundry Specialists, Inc., and ImageFIRST of California, LLC (together, "ImageFIRST"), as well as those entities through which ImageFIRST has and does employ those similarly situated to Campanelli, as more particularly set forth immediately below, to vindicate his and the rights of those similarly situated for ImageFIRST's willful violation of the Federal and state wage and overtime laws arising from ImageFIRST's misclassification as exempt of those employees who deliver and pick-up ImageFIRST's products.

## PARTIES

2.     Kyle L. Campanelli is a resident of Walnut Creek, California who formerly worked for an employer self-denominated as ImageFIRST, with his territory covering and including Santa Clara, San Mateo, Alameda, Santa Cruz, Stanislaus and Yolo counties from March 2014 until March 3, 2015.

3.     The employer, ImageFIRST, identified its headquarter address as 900 E 8th Avenue Suite 300, King of Prussia, PA 19406, at the time of Campanelli's recruitment, application and hiring.

4.     This employer, ImageFIRST, in turn identified the following and various entities as the "Employer" of Campanelli in an "Employment Agreement," including, without limitation, "ImageFIRST Uniform Rental Service, Inc.," "ImageFIRST Healthcare Laundry Specialists, Inc.," "ImageFirst [sic] of North Carolina, LLC," "ImageFIRST Atlanta, LLC," "ImageFirst [sic] of California, LLC," "ImageFirst [sic] of Chicago, LLC," "ImageFIRST of Texas," "any franchisee of ImageFirst [sic] Health Care Laundry Specialists, Inc.," or "any company engaged in business activities which are the same as, similar to, or in competition with the business of Employer, of which at least 40% of the equity is owned by Joseph H. Berstein or his descendants."

5.     Of these ImageFIRST entities ImageFirst of California, LLC, is formally authorized to do business in California according to California business registration records, and on information and belief

ImageFIRST Uniform Rental Service, Inc. and ImageFIRST Healthcare Laundry Specialists, Inc. are doing business in California, and the parent/holding/affiliate corporate entities are also authorized to and doing business elsewhere around the country in the form of these variously named ImageFIRST or ImageFirst corporate entities, apparently owned in whole or part by the Berstein family.

6.      For purposes of the remainder of this pleading, Plaintiff will refer collectively to the entities identified in Paragraphs 4 and 5 as "ImageFIRST" or "Defendants," but this reference includes any entity under which ImageFIRST employs or controls employees to perform the functions described in Paragraph 7, below.

7.      Those "similarly situated" to Campanelli are past and present employees of ImageFIRST who engage/were engaged in the pick-up and delivery of ImageFIRST products to and from customers intrastate however that employment position was denominated, including, by example and without limitation, "Customer Advocate," "Route Driver," "Service Manager," "Service Supervisor," and "Associate," and who were classified as exempt from Federal and state overtime laws.

8.      Campanelli, on his behalf and on behalf of this similarly situated, seeks to vindicate legal rights which are being and have been violated by ImageFIRST's willful violation of the Federal and state overtime laws by misclassifying these employees and former employees as exempt from Federal and state overtime laws, when they are not exempt, thereby denying them compensation to which they were owed.

## JURISDICTION AND VENUE

9.      The Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 over the Plaintiff and putative collective action members' federal Fair Labor Standards Act ("FLSA") claims.

10.     The Court has diversity of citizenship subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) and pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), over Plaintiff's California state

wage and overtime claims. In addition, the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law wage and hour claims.

11.     Venue is proper in this Court, as Plaintiff Kyle Campanelli resided and worked within the Court's jurisdictional bounds during the legal violations set forth here, and still resides therein, ImageFIRST's violations of state and federal law occurred within the Court's jurisdictional bounds, and because Plaintiff has chosen this forum in which to litigate these claims.

**INTRADISTRICT ASSIGNMENT**

12.     This action is appropriately assigned in the San Francisco or Oakland Division because Plaintiff Kyle Campanelli at all relevant times herein resided in Contra Costa County and, at all relevant times herein, covered territories which included San Mateo and Alameda counties.

**GENERAL ALLEGATIONS**

13.     In *Watkins v. Ameripride Svcs.*, 375 F.3d 821 (9th Cir. 2004), the Ninth Circuit addressed a case where laundry service products were not in continuous transportation and were not warehoused only temporarily before delivery; instead, there the employer placed orders with an out-of-state vendor, with delivery to the company's intrastate warehouse for future delivery to customers yet to be identified. 375 F.3d at 826. These facts made the deliveryperson non-exempt. *Id*. at 827.

14.     Here, ImageFIRST's deliveryperson employees are non-exempt from Federal and state overtime protections. ImageFIRST's business is entering into service agreements where ImageFIRST maintains ownership and title to the products at issue throughout the term of the service agreement.

15.     While some of the products which are the subject of these service agreements may originate out of state, such products are delivered by others to laundry/warehouse locations, the products are fungible, ImageFIRST transfers title between ImageFIRST entities on delivery to the local laundry/warehouse facility, which typically are leased and not owned by ImageFIRST, and which perform laundry and warehouse functions for others other than ImageFIRST, and the maintenance of this stock of

product is related to the overall business volume of the local market being served, as opposed to being specifically or generally identified and ordered for particular or specific customers.

16.    ImageFIRST deliverypersons have performed and perform substantial amounts of manual labor, were not and are not directly related to the management or business operations of ImageFIRST or its customers, and were not and are not involved in the exercise of discretion and independent judgment with respect to matters of significance.

17.    For example, the ImageFIRST deliverypersons do not negotiate or set the prices under the service agreements or for any of the ancillary products they have or may "sell."

18.    While ImageFIRST is known to have exaggerated the actual duties and responsibilities of deliverypersons, including through publicly available videos the company has posted on YouTube, Facebook and its website,[1] ImageFIRST deliverypersons' actual primary responsibility is the labor-intensive intrastate delivery of clean linens and pick-up of soiled linens pursuant to customer service agreements, for prices which are negotiated by others than the ImageFIRST deliverypersons.

19.    However their employment positions are denominated, the employees of ImageFIRST who are responsible for delivery of clean products to customers from warehousing/laundry centers, and pick-up of soiled products to customers to return to warehousing/laundry centers, are not exempt from Federal or state wage and overtime laws.

20.    While ImageFIRST may use different titles for these deliverypersons, the nature of the business and the job duties of the position[s] are common, similar and consistent throughout the states where ImageFIRST operates and does business.  Commonalities include not only the fundamental nature of ImageFIRST's business model, but ImageFIRST also centrally has controlled and identified, and controls

---

[1]    ImageFIRST's YouTube publications, which contain various promotional videos of deliverypersons in various parts of the country, can be found at https://www.youtube.com/user/imagefirstmedical; the company Facebook page likewise refers prospective customers and employees to such videos, at https://www.facebook.com/ImageFIRST.HLS?fref=ts; as does the company website, http://www.imagefirst.com/Customer-Advocates.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

and identifies, policies, practices and procedures for the deliverypersons, including the following: a) centralized employee screening; b) centralized employee testing; c) common fleet safety programs; d) a common "Associate Handbook"; e) common benefits programs; f) common notices, such as vis-à-vis COBRA notifications; g) a common "Hazard Protection Program," h) a common "Company Vehicles & Usage Policy"; i) a common "Attendance Policy"; j) common physical demands for the position; k) common and similar Employment Agreements; l) centralized advertising for these variously denominated deliveryperson positions; m) centralized and common procedures governing employment of deliverypersons; and n) mandatory compliance with a purportedly proprietary "Manual" which also encompasses, on information and belief, centrally controlled employment policies and procedures.

21.     While ImageFIRST operates under various corporate and entity names - seemingly contrary to what it represents to the public on its website, other public media and otherwise, where it claims to be a "family owned business" - on information and belief, these numerous entities are essentially all owned in whole or part by the Berstein family, operating under the law as a joint venture or joint or common employers to the deliverypersons, and are each responsible and liable for properly classifying and treating and paying their employees under the Federal and stage wage and overtime laws.

22.     On information and belief, each entity identified in Paragraphs 4, 5 and 6 were the agents, servants, principals, subsidiaries or affiliates of the other entities identified in Paragraphs 4, 5 and 6 and were acting within the scope of that agency and capacity.

23.     But, in fact, ImageFIRST classifies all deliverypersons as exempt, structures their duties, routes and time so that they work more than forty hours in any given week, and has not paid and does not pay Plaintiff or any other similarly situated workers for any of the time they have worked more than forty hours per week.

24.     In fact, ImageFIRST describes the deliveryperson position as one that requires up to 10 hours per day of driving a vehicle, and on its own website and otherwise represents that these

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

deliverypersons are available to the customers through phone and smart phone applications 24 hours per day.

25.     ImageFIRST also did not pay Plaintiff and the others similarly situated any overtime compensation for any of the time they spent traveling to, from and between customer visits.

26.     ImageFIRST also did not pay Plaintiff or the similarly situated worker any overtime compensation for any of the time they spent performing at-home work.

27.     ImageFIRST knew or should have known that its fundamental business model, described above, would require that these workers be classified as non-exempt under Federal and state overtime wage and overtime laws.

28.     ImageFIRST knew or should have known and knows that its deliverypersons were and are working over forty hours per week.

29.     ImageFIRST's violations of the California and Federal overtime laws relative to its deliverypersons are and were always knowing and willful.

30.     Plaintiff and all those similarly situated have been severely damaged by ImageFIRST's longstanding and ongoing violations of the California and Federal overtime laws.

31.     ImageFIRST's executives and management team also did not post or otherwise advise its deliverypersons of the legal requirements of overtime through posting these requirements, or otherwise publish them to the workers.  Instead, ImageFIRST has represented to these employees that they are exempt.

32.     These efforts to cover up the fact that overtime was, in fact, owed to the workers, was designed to and had the affect of purposely lulling hundreds of workers owed overtime into inaction. ImageFIRST therefore cannot be heard to complain that any of these deceived workers waiting too long to pursue their legal rights.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

## INDIVIDUAL ALLEGATIONS

33.     Kyle Campanelli was employed by ImageFIRST from March 2014 to March 3, 2015.  For this entire time period at ImageFIRST, Mr. Campanelli's primary job duty as directed by ImageFIRST was to pick-up and deliver cleaned laundry to ImageFIRST customers from a warehouse/laundry center, and to pick-up soiled, used laundry from ImageFIRST customers and deliver to a warehouse/laundry center.

34.     While ImageFIRST also directed that Plaintiff Campanelli seek to make ancillary sales of ImageFIRST products while delivering and picking-up ImageFIRST rental products, this was a relatively minor and non-primary duty he performed.

35.     For his entire time period at ImageFIRST, Mr. Campanelli's primary duty involved a substantial amount of manual labor, was not directly related to the management or business operations of ImageFIRST or its customers, and did not involve the exercise of discretion and independent judgment with respect to matters of significance.

36.     For his entire time period at ImageFIRST, Mr. Campanelli worked for more than forty hours per week and was denied meals and rest periods.  ImageFIRST never paid Mr. Campanelli any overtime compensation for any of the time he worked over forty hours per week.

## COLLECTIVE ACTION ALLEGATIONS

37.     Pursuant to 29 U.S.C. § 216(b), Plaintiff brings this action on his own behalf and on behalf of all others similarly situated.

38.     Under the FLSA, an employee may bring a collective action in an individual capacity on behalf of other employees "similarly situated" based on an employer's failure to pay overtime wages.  29 U.S.C. § 216(b).  To maintain a collective action under the FLSA, a plaintiff need only show that the putative collective action members are "similarly situated."

39.     Plaintiff seeks to represent a National Collective, defined as all past and present employees of ImageFIRST who engage/were in engaged in the pick-up and delivery of ImageFIRST products to and

from health care providers, however that employment position is/was denominated, including, by example and without limitation, "Customer Advocate," "Route Driver," "Service Manager," "Service Supervisor," and "Associate," and who were classified as exempt from Federal overtime laws.

40. All ImageFIRST employees within the identified National Collective are similarly situated, in that, for example and without limitation, they have the same or similar job duties, they have the same or similar training and physical requirements, are paid the same or similar compensation, are subject to the same or similar policies and procedures, and are treated the same for overtime classification purposes.

41. Accordingly, the Court should certify this action as a collective action pursuant to 29 U.S.C. § 216(b).

## CALIFORNIA CLASS ACTION ALLEGATIONS

42. Pursuant to Federal Rule of Civil Procedure ("Rule") 23, the Plaintiff brings this action on his own behalf, and on behalf of all others similarly situated. The California Class consists of all past and present employees of ImageFIRST who engage/were engaged in the pick-up and delivery of ImageFIRST products to and from health care providers, however that employment position was denominated, including, by example and without limitation, "Customer Advocate," "Route Driver," "Service Manager," "Service Supervisor," and "Associate," and who were classified as exempt from California overtime laws.

43. Plaintiff meets the requirements of Rule 23(a). First, the California Class is so numerous that the joinder of all members is impracticable. While the exact size of the California Class and the identity of the members will be readily ascertainable from the business records of Defendants, ImageFIRST represents to the public that is has delivery services in many metropolitan markets across the country. *See* http://www.imagefirst.com/locations.

44. There are a number of common questions of fact and law, including:

    a. Whether the deliverypersons based on their common job duties are exempt from the overtime requirements under California law;

b. Whether ImageFIRST misclassified deliverypersons as exempt under California law;

c. Whether ImageFIRST unlawfully deprived the deliverypersons of overtime compensation;

d. Whether ImageFIRST failed to timely pay the deliverypersons their wages under California law;

e. Whether ImageFIRST failed to provide for time allowances for meals and rest breaks; and

f. Whether ImageFIRST's business practices were unlawful, unfair, or fraudulent in violation of California Business and Professions Code §§ 17200, *et seq.*

45. Plaintiff's claims are also typical of the class members claims as they are reasonably co-extensive with those of absent class members.

46. Plaintiff is also an adequate class representatives as that he does not have conflicts of interest with the proposed class and that they are represented by qualified counsel.

47. Plaintiff has also satisfied the requirements of Rule 23(b)(3).

48. It is clear that questions of fact common to the class predominate. The ImageFIRST employees are substantially similar in nearly every aspect of their job duties due to ImageFIRST's uniform policies and procedures and have a common exempt classification.

49. A class action is superior to other methods for the fair and efficient adjudication of this controversy.

50. Furthermore, the members of the California Class have no plain, speedy, or adequate remedy at law against ImageFIRST, other than by maintenance of this class action, because Plaintiff is informed and believes, and on the basis of that information and belief alleges, that the damage to each member of the class is relatively small, and that it would be economically infeasible to seek recovery against ImageFIRST other than by a class action. There will be no real difficulty in the management of this

litigation as a class action.

51.     As the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, the Court should certify the following opt-out class under Rule 23:  all past and present employees of ImageFIRST who engage/were engaged in the pick-up and delivery of ImageFIRST products to and from health care providers, however that employment position was denominated, including, by example and without limitation, "Customer Advocate," "Route Driver," "Service Manager," "Service Supervisor," and "Associate," and who were classified as exempt from  California state overtime laws.

### FIRST CAUSE OF ACTION
**Violation of the Fair Labor Standards Act**
**(Brought By Plaintiff and the National Collective Against All Defendants)**

52.     Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

53.     At all relevant times, ImageFIRST has been and is an employer engaged in commerce as those terms are defined in 29 U.S.C. § 203(b), (d).  At all times relevant, ImageFIRST has been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

54.     Plaintiff is informed and believes, and thereon alleges, that ImageFIRST has required Plaintiff and those similarly situated as part of their employment to work without additional compensation, such as overtime, in excess of the forty hours per week maximum under 29 U.S.C. § 207(a)(1), which provides the following:

> Except as otherwise provided in this section, no employer shall employ any of his
> employees . . .  for a work week longer than forty hours unless such employee receives
> compensation for his employment in excess of the hours above specified at a rate not less
> than one and one-half times the regular rate at which he is employed.

55.     In fact, in the performance of their duties for ImageFIRST, Plaintiff  and those similarly situated necessarily did work over forty hours per week, yet they did not receive overtime compensation required by the FLSA, 29 U.S.C. § 207, for the work, labor and services they provided to defendant

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

ImageFIRST.  The precise number of hours will be proven at trial.

56.     Defendant's conduct in violating 29 U.S.C. § 207 is unlawful under 29 U.S.C. § 215(a)(2), which provides:

> [I]t shall be unlawful for any person—(2) to violate any of the provisions of . . . section 207 of this title, or any of the provisions of any regulation or order of the Secretary issued under section 214 of this title.

57.     The representative Plaintiff proposes that notice of these proceedings be given to those similarly situated and who have been aggrieved by ImageFIRST's unlawful conduct and be permitted to join this action as Plaintiff, pursuant to 29 U.S.C. § 216(b), by filing written consents to joinder with the Court.

58.     Plaintiff incorporates by reference the written consent of joinder by Plaintiff which is attached to the Complaint as Exhibit A.

59.     Defendants' violations of the FLSA were willful.

60.     As a result of the foregoing, Plaintiff seeks judgment against Defendants on his own behalf, and on behalf of those similarly situated who file written consents to joinder in this action, for all unpaid wages, including overtime and straight time wages owed by Defendants to the Plaintiff and those similarly situated, pursuant to 29 U.S.C. § 207, together with an award of an additional equal amount as liquidated damages , and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### Declaratory Relief
### (Brought By Plaintiff and the National Collective Against All Defendants)

61.     Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

62.     An actual controversy has arisen and now exists relating to the rights and duties of the parties herein in that Plaintiff contends that ImageFIRST wrongfully misclassified Plaintiff and those similarly situated as exempt employees and failed to pay overtime compensation in violation of the FLSA.

63.     Plaintiff desires a declaration as to the validity of Defendants' classification of Plaintiff and those similarly situated as exempt from the FLSA.  A judicial declaration is necessary and appropriate at this time so that Plaintiff may ascertain his rights and duties, and those of other affected persons in regard to their entitlement to overtime compensation and other appropriate relief.

### THIRD CAUSE OF ACTION
**Violation of California Wage Orders and Labor Code**
**(Brought By Plaintiff and the California Class Against All Defendants)**

64.     Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

65.     During the time period the deliverypersons were employed and continuing through the present, Plaintiff and the putative California Class members were employed by and did perform work for ImageFIRST, often in excess of eight hours in a workday and/or forty hours in a workweek.

66.     During said time period, ImageFIRST refused to compensate Plaintiff and the putative California Class members for some and/or all of the wages, including overtime earned, in violation of the California Labor Code and IWC Wage Orders.

67.     Moreover, during said time period, many of the putative California Class members were employed by and were thereafter terminated or resigned from their positions with ImageFIRST, yet were not paid all wages due upon said termination or within seventy-two hours of said resignation of employment therefrom.  Said non-payment of all wages due was the direct and proximate result of a willful refusal to do so by Defendants.

68.     At all relevant times, ImageFIRST was aware of and was under a duty to comply with various provisions of the California Labor Code and/or Wage Orders issued by the Industrial Welfare Commission ("IWC"), including but not limited to:

    a.     Labor Code § 201(a): "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

    b.     Labor Code § 202(a): "If an employee not having a written contract for a definite period

quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

c. <u>Labor Code § 203</u>: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

d. <u>Labor Code § 510(a)</u>: "Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."

e. <u>Labor Code § 1198</u>: "The maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees. The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."

f. <u>IWC Wage Order 7-2001(3)(A)</u>: "[E]mployees shall not be employed more than eight (8) hours in any workday or more than forty (40) hours in any workweek unless the employee receives one and one-half (1 1/2) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. [. . .] Employment beyond eight (8) hours in any workday or more titan six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than: (a) One ne and one-half (1 1/2) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours on tile seventh (7th) consecutive day of work in a workweek; and (b) Double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek."

69. At all relevant times, ImageFIRST was aware of and was under a duty to comply with various additional provisions of the California Labor Code and/or Wage Orders issued by the IWC as cited and discussed elsewhere in this Complaint.

70. By refusing to compensate Plaintiff and the California Class members for all wages earned, ImageFIRST violated those California Labor Code and IWC Wage Order provisions, cited herein. ImageFIRST's violations of those California Labor Code and IWC Wage Order provisions were willful.

71. In addition, California Labor Code § 512(a) provides:

An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

72. At all relevant times, ImageFIRST was aware of and was under a duty to comply with California Labor Code § 512.

73. California Labor Code § 226.7 provides:

(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

74. At all relevant times, ImageFIRST was aware of and was under a duty to comply with California Labor Code § 226.7.

75. IWC Wage Order No. 7-2001(11) and (12) also mandate that employers provide all applicable mean and/or rest periods.

76. IWC Wage Order No. 7-2001(11) provides:

(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes . . . (B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes . . . (D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

77. IWC Wage Order No. 7-2001(12) provides:

(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period

time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof . . . (B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided.

78.     At all relevant times, ImageFIRST was aware of and was under a duty to comply with IWC Wage Order No. 7-2001(11) and (12).

79.     By failing to consistently provide uninterrupted rest periods and/or thirty-minute meal periods to Plaintiff and the putative California Class members, ImageFIRST violated these California Labor Code and IWC Wage Order provisions.  ImageFIRST's violations of those California Labor Code and IWC Wage Order provisions were willful.

80.     In addition, California Labor Code § 226(a) provides:

Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, . . . (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, . . . (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

81.     Moreover, California Labor Code § 1174 provides:

Every person employing labor in this state shall . . . (d) Keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than two years.

IWC Wage Order 7-2001(7) also provide for this documentation requirement.

82.     At all relevant times, ImageFIRST was aware of and was under a duty to comply with California Labor Code §§ 226(a) and 1174(d) and IWC Wage Order 7-2001(7).  Nevertheless, ImageFIRST failed to provide timely, accurate itemized wage statements to Plaintiff and the California

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

Class members. None of the statements provided by ImageFIRST has accurately reflected actual gross wages earned, net wages earned, or the appropriate deductions of such members of the California Class members. ImageFIRST's violations of those California Labor Code and IWC Wage Order provisions were willful.

83.     As a direct and proximate result of ImageFIRST's unlawful conduct, as set forth herein, Plaintiff and the putative California Class members have sustained damages, including loss of earnings for hours of overtime worked on behalf of ImageFIRST, in an amount to be established at trial. As a further direct and proximate result of ImageFIRST's unlawful conduct, as set forth herein, Plaintiff and putative California Class members are entitled to recover "waiting time" penalties/wages, in an amount to be established at trial, costs and attorneys' fees, pursuant to statute.

**FOURTH CAUSE OF ACTION**
**California Business and Professions Code §§ 17200, *et seq*.**
**(Brought By Plaintiff and the California Class Against All Defendants)**

84.     Plaintiff and the putative California Class members incorporate in this cause of action each and allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

85.     The Unfair Competition Law, Business and Professions Code § 17200, provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by" the False Advertising Act, Business and Professions Code § 17500. The Unfair Competition Law provides that a Court may order injunctive relief and restitution as remedies for any violation of the Act.

86.     The business acts and practices of ImageFIRST, in violating the FLSA, the California Labor Code and IWC Wage Orders as hereinabove described, constitute an unlawful, unfair and/or fraudulent business practice in violation of the Unfair Competition Law. Specifically, ImageFIRST conducted business activities while failing to comply with the legal mandates cited herein.

87.     ImageFIRST's knowing failure to adopt policies in accordance with and/or adhere to these laws, all of which are binding upon and burdensome to ImageFIRST's competitors, engenders an unfair competitive advantage for ImageFIRST, thereby constituting an unfair business practice, as set forth in California Business and Professions Code §§ 17200-17208.

88.     Plaintiff has suffered injury in fact and an economic loss by the withholding of wages due under the FLSA, the California Labor Code, and/or IWC Wage Orders. Unless restrained and enjoined, ImageFIRST will continue in the acts and practices alleged above. Accordingly, the Court must issue an injunction restraining and enjoining ImageFIRST from engaging in the acts and practices alleged above. Plaintiff further requests an order restoring to Plaintiff and members of the putative California Class any money or property, real or personal, which has been lost by means of ImageFIRST's unfair and deceptive business practices.

89.     In addition, pursuant to California Code of Civil Procedure § 1021.5, Plaintiff is entitled to recover his reasonable attorneys' fees, costs and expenses incurred in bringing this action.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiff, on behalf of himself and the proposed National Collective and California Class, prays for judgment and the following specific relief against ImageFIRST as follows:

1.     That the Court declare, adjudge and decree that this action is a proper collective action under 29 U.S.C. § 216 and class action under Federal Rule of Civil Procedure, Rule 23 and certify the proposed collective and class and/or any other appropriate subclasses;

2.     That the Court declare, adjudge and decree that defendant ImageFIRST violated the overtime provisions of the FLSA as to the Plaintiff and the proposed National Collective and that defendant ImageFIRST violated the overtime provisions of the California Labor Code and the IWC Wage Orders as to Plaintiff and the putative California Class members;

3.     That the Court declare, adjudge and decree that defendant ImageFIRST willfully violated its

legal duties under the FLSA, the California Labor Code and the IWC Wage Orders;

4.      That the Court declare, adjudge and decree that the Plaintiff and the proposed National Collective members were at all times relevant hereto, and are, entitled to be paid overtime for work beyond 8 hours per day or 40 hours per week and that the amounts to which Plaintiff and the National Collective are entitled is to be doubled as liquated damages and issue and award thereto;

5.      That the Court declare, adjudge and decree that the Plaintiff and the National Collective members were at all times relevant hereto, and are, entitled to be paid straight time compensation for work performed for which they have not received straight time compensation;

6.      That defendant ImageFIRST be preliminarily and permanently enjoined from engaging in the acts herein described in violation of the FLSA, the California Labor Code and IWC Wage Orders;

7.      That the Court make an award to Plaintiff and the National Collective members damages for the amount of unpaid compensation, including interest thereon, and penalties in an amount to be proven at trial;

8.      That the Court declare, adjudge and decree that defendant ImageFIRST violated California Labor Code §§ 226.7 and 512 and applicable IWC Wage Orders for willful failure to provide meal and rest periods (including second rest periods) to Plaintiff and the members of the putative California Class, that defendant ImageFIRST violated the recordkeeping provisions of California Labor Code §§ 226(a) and 1174(d) as to Plaintiff and the members of the putative California Class, and for willful failure to provide accurate semimonthly statements thereto, and that defendant ImageFIRST violated California Labor Code §§ 201, 202, and 203 for willful failure to pay all compensation owed at the time of termination of employment to Plaintiff and the members of the putative California Class;

9.      That the Court declare, adjudge and decree that defendant ImageFIRST violated California Business and Professions Code §§ 17200 *et seq.* by failing to pay Plaintiff and the members of the putative California Class overtime compensation, "waiting time" penalties, and/or failing to provide accurate

itemized statements;

10.     That the Court make an award to Plaintiff and the members of the putative California Class of one hour of pay at each employee's regular rate of compensation for each workday that a meal period was not provided;

11.     That the Court make an award to Plaintiff and the members of the putative California Class of one hour of pay at each employee's regular rate of compensation for each workday that a rest period was not provided;

12.     That the Court make an award to Plaintiff and the members of the putative California Class of "waiting time" penalties/wages pursuant to California Labor Code § 203;

13.     That the Court order defendant ImageFIRST to pay restitution to Plaintiff and the members of the putative California Class due to defendant ImageFIRST's unlawful, unfair and/or fraudulent activities, pursuant to California Business and Professions Code §§ 17200-08;

14.     That the Court further enjoin defendant ImageFIRST, ordering it to cease and desist from unlawful, unfair and/or fraudulent activities in violation of California Business and Professions Code §§ 17200 *et seq.*;

15.     For all other orders, finding and determinations identified and sought in this Complaint;

16.     For interest on the amount of any and all economic losses, at the prevailing legal rate;

17.     For reasonable attorney fees pursuant to 29 U.S.C. § 216(b), California Labor Code §§ 218.5 and 1194, and/or California Code of Civil Procedure § 1021.5; and

18.     For costs of suit and any and all such other relief as the Court may deem proper.

//

//

//

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION

## JURY DEMAND

Plaintiff hereby demands trial by jury on issues triable by right of jury.

Dated:    September 28, 2015                    THE BRANDI LAW FIRM


                                               By:__/s/ Brian J. Malloy_____
                                                     THOMAS J. BRANDI
                                                     BRIAN J. MALLOY
                                                     The Brandi Law Firm
                                                     354 Pine Street, Third Floor
                                                     San Francisco, CA 94104
                                                     Telephone: (415) 989-1800
                                                     Facsimile: (415) 989-1801
                                                     bjm@brandilaw.com

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND RESTITUTION