UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE L. CAMPANELLI,<br><br>    Plaintiff,<br><br>    v.<br><br>IMAGE FIRST UNIFORM RENTAL SERVICE, INC., et al.,<br><br>    Defendants. | Case No. 15-cv-04456-PJH<br><br>**ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Re: Dkt. No. 22 |

Before the court is defendant ImageFIRST Uniform Rental Service, Inc.'s motion to dismiss for lack of personal jurisdiction. Dkt. 22. After the matter came on for hearing on March 30, 2016, the court permitted limited jurisdictional discovery, following which the parties were to file supplemental briefs on the motion. Dkt. 40. The supplemental briefs have been filed, and the matter is ripe for decision. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion to dismiss for the following reasons.

## BACKGROUND

### A. Campanelli's Complaint

This is putative class action based on the Fair Labor Standards Act ("FLSA") and various provisions of the California Labor Code. Plaintiff Kyle Campanelli was formerly employed by an ImageFIRST entity as a delivery person from March 2014 to March 3, 2015. First Amended Complaint ("FAC") ¶ 4, 33. The complaint names three ImageFIRST companies as defendants: (1) ImageFIRST Uniform Rental Service, Inc.

("IF Uniform"); (2) ImageFIRST Healthcare Laundry Specialists, Inc. ("IF Healthcare"); and (3) ImageFIRST of California, LLC ("IF California"). Plaintiff's primary job duty was to pick up soiled laundry from ImageFIRST customers and deliver it to a warehouse/laundry center, and to pick up clean laundry from the warehouse/laundry center and deliver it to ImageFIRST customers. FAC ¶ 33. Campanelli alleges that he worked over forty hours a week but was denied meal and rest periods, and was never paid overtime compensation. FAC ¶ 36.

Campanelli seeks to represent all similarly situated delivery persons of any ImageFIRST entity nationwide in a collective action for failure to pay overtime wages under the FLSA, see FAC ¶¶ 4, 37–41, as well as a Rule 23 class of similarly situated delivery persons who were wrongly classified as exempt under California labor laws, see FAC ¶¶ 42–51. Plaintiff defines similarly situated employees as "past and present employees of [ImageFIRST] who engage/were engaged in the pick-up and delivery of ImageFIRST products to and from customers intrastate however that employment was denominated . . . and who were classified as exempt from Federal and state overtime laws." FAC ¶ 7. Plaintiff alleges that ImageFIRST delivery persons should not be classified as exempt because they perform substantial manual labor, are not directly related to management or business operations, and are not involved in the exercise of discretion and judgment with respect to matters of significance. FAC ¶ 16, 19.

**B.   The ImageFIRST Entities**

IF California has answered the complaint and does not contest this court's jurisdiction over it. Dkt. 25. IF California admits that it employed Campanelli, id. ¶ 3, and was the employer of all the California employees alleged in this lawsuit to perform laundry delivery services. See Declaration of Gino Giannettino ("Giannettino Decl."), Dkt. 22-1 ¶ 7. IF California oversees and manages its operations and employees in all of its California operating regions. Id. ¶ 3. IF California paid its employees' wages and provided applicable benefits, set its employees' work schedules, and determined its employees' specific duties. Id. ¶ 4.

Like IF California, IF Healthcare has filed an answer and does not dispute personal jurisdiction in California. Dkt. 23. IF Healthcare, however, does deny that it employed Campanelli. Id. ¶ 3.

IF Uniform is a corporate entity incorporated under the laws of Delaware and maintains its principal place of business in Lancaster, Pennsylvania. Declaration of James Kennedy ("Kennedy Decl."), Dkt. 22-2 ¶ 3. According to the declaration of its Vice President, IF Uniform does not conduct business or operate in California, has no offices, mailing address or bank accounts in California, and does not generate revenues in California. Id. ¶¶ 4–7. IF Uniform has not appointed an agent for service of process in California and is not qualified to do business in California. Id. ¶ 11. IF Uniform does not solicit business from California residents or advertise within the state of California, does not hold a California business license and does not employ anyone within the state of California. Id. ¶¶ 9–10. In particular, IF Uniform denies hiring or employing Campanelli, determining his compensation, paying his wages and benefits, or determining plaintiff's work duties. Id. ¶ 15. IF Uniform maintains all corporate formalities to distinguish it from IF California, which is a separate business entity. Id. ¶ 12. IF Uniform avers that it has never exerted management control of any California operations, employees, or marketing of IF California. Id. ¶ 13.

**C.  IF Uniform's Motion to Dismiss**

Based on its asserted lack of connection to California, IF Uniform filed a motion to dismiss for lack of personal jurisdiction. Dkt. 22. Campanelli opposed the motion, asserting two principal theories for specific personal jurisdiction over IF Uniform: (1) based on IF Uniform's own contacts with California; (2) based on IF Uniform having "a Single Enterprise, Joint Employer, and/or Agency" relationship with the other ImageFIRST entities. Dkt. 35-1 at p. i-ii. Campanelli does not argue that IF Uniform is subject to general personal jurisdiction in California.

The key pieces of evidence offered by Campanelli in support of personal jurisdiction over IF Uniform are: (1) an unsigned employment agreement "provided to"

3

1  Campanelli that lists IF Uniform as one of many "employers" (the "Employment
2  Agreement"); (2) a passive website that does not distinguish between the different
3  ImageFIRST entities (the "Website"); and (3) an Associate Handbook (the "Handbook"),
4  whose authorship is unclear, that is used by ImageFIRST entities in a number of states,
5  including California.
6      Following the March 30, 2016 hearing, the court issued an order finding that the
7  "plaintiff has raised sufficient questions about the nature of the relationship between IF
8  Uniform and the two answering defendants based on statements made in the documents
9  titled Employment Agreement, ImageFIRST Associate Handbook, and Franchise
10 Disclosure Document, as well as the imagefirst.com website, to warrant limited
11 jurisdictional discovery on the issue [of] whether IF Uniform has sufficient, if any,
12 contacts, with the forum state."  Dkt. 40 at p. 1.  However, the court denied leave for
13 discovery into any possible "agency relationship between IF Uniform and ImageFIRST of
14 California," because plaintiff had not established a prima facie case supporting any of the
15 agency theories.  Id.
16     The close of jurisdictional discovery was May 31, 2016.  Originally, Campanelli
17 was to file a supplemental brief by June 14, 2016.  Instead, Campanelli bought a motion
18 to compel discovery responses.  Dkt. 43.  On July 1, 2016, the court denied the motion to
19 compel, and reset the schedule for the supplemental briefing.  Dkt. 47.  Campanelli and
20 IF Uniform have filed their supplemental briefs, see Dkt. 49, 50, and the underlying
21 motion to dismiss is now fully briefed and ready for decision.

22 **DISCUSSION**
23 **A.    Legal Standards**
24     The party seeking to invoke a federal court's jurisdiction bears the burden of
25 demonstrating jurisdiction.  Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir.
26 2006); Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).
27 When resolving a motion to dismiss under Rule 12(b)(2) on written materials, the court
28 accepts uncontroverted facts in the complaint as true and resolves conflicts in affidavits in

4

plaintiff's favor. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011); Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001). When a district court relies solely on affidavits and discovery materials, "the plaintiff need only establish a prima facie case of jurisdiction." Rano v. Sipa Press, Inc., 987 F.2d 580, 587 n.3 (9th Cir. 1993); see also Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015).

The Due Process Clause of the Fourteenth Amendment "limits the power of a state's courts to exercise jurisdiction over defendants who do not consent to jurisdiction." Martinez v. Aero Caribbean, 764 F.3d 1062, 1066 (9th Cir. 2014). A district court sitting in diversity may exercise personal jurisdiction to the same extent as the courts of general jurisdiction of the state in which it is located. CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1073 (9th Cir. 2011). Here, because California's long-arm statute is "coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." Id. (quotations and citations omitted); see also Cal. Civ. Proc. Code § 410.10.

Due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 315 (1945) (quotations omitted). Under the "minimum contacts" analysis, a court can exercise either "general or all-purpose jurisdiction," or "specific or conduct-linked jurisdiction." Daimler AG v. Bauman, 134 S. Ct. 746, 751 (2014) (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011)); see Int'l Shoe, 326 U.S. at 316–20.

Here, only specific jurisdiction over IF Uniform is alleged by Campanelli. A court may exercise specific jurisdiction over a defendant if its contacts with the forum gave rise to the claim or claims pending before the court – that is, if the cause of action "arises out of" or has a substantial connection with that activity. Hanson v. Denckla, 357 U.S. 235, 250–53 (1958); see also Goodyear, 131 S. Ct. at 2854. The Ninth Circuit applies a three-part test to determine whether a defendant's contacts with the forum are sufficient to

establish specific jurisdiction:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.  (2) The claim must be one which arises out of or results from the defendant's forum-related activities.   (3) Exercise of jurisdiction must be reasonable.

Gordy v. Daily News, L.P., 95 F.3d 829, 831–32 (9th Cir. 1996) (quoting Data Disc, 557 F.2d at 1287); see also Unocal, 248 F.3d at 923.

The first requirement is satisfied if the defendant has either (1) "purposefully availed" itself of the privilege of conducting activities in the forum, or (2) "purposefully directed" its activities toward the forum.  Pebble Beach Co., 453 F.3d at 1155 (citing Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)).  "Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum."  Id.  "Evidence of direction generally consists of action taking place outside the forum that is directed at the forum," such as distribution and advertising.  Id. at 1155–56 (citation omitted).

The second requirement for specific jurisdiction is that the contacts constituting purposeful availment must be the ones that give rise to the current suit.  Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1088 (9th Cir. 2000).  This requirement is measured in terms of "but for" causation.  Id. (citing Ziegler v. Indian River County, 64 F.3d 470, 474 (9th Cir. 1995)).

The third and final requirement for specific jurisdiction is reasonableness.  For jurisdiction to be reasonable, it must comport with fair play and substantial justice. Bancroft & Masters, 223 F.3d at 1088 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)).  The defendant bears the burden of demonstrating unreasonableness with a "compelling case that the presence of some other considerations would render jurisdiction unreasonable."  Burger King, 471 U.S. at 477.

///

6

## B. Specific Jurisdiction Based on IF Uniform's Own Contacts with California

Campanelli's first argument for jurisdiction relies on IF Uniform's own contacts with California, primarily relying on the Employment Agreement, the Website, and the Handbook. Even presuming that these contacts were purposefully directed by IF Uniform at California—which Campanelli has not shown—these contacts do not <u>give rise to</u> Campanelli's wage and hour claims.

### 1. The Employment Agreement

Plaintiff argues that IF Uniform's alleged employment of plaintiff amounts to an act that is aimed at and has an effect in the forum under the "effects test" set forth in <u>Calder v. Jones</u>, 465 U.S. 783 (1984). <u>See</u> Opp'n at 11 and n.5. As recognized by the Ninth Circuit, the <u>Calder</u> "effects test" allows the exercise of jurisdiction over a defendant whose only contact with California is "the purposeful direction of a foreign act having effect in the forum state." <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 621 (9th Cir. 1991) (citations and internal marks omitted). To meet the effects test, the defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state. <u>Bancroft & Masters</u>, 223 F.3d at 1087.

IF Uniform objects to the admissibility of the Employment Agreement as unauthenticated and lacking foundation, particularly given that the agreement is not signed. The Agreement identifies IF Uniform as an "Employer," but it does so only "[f]or purposes of Paragraphs 6 and 9" of the document. Dkt. 35-2 at ¶ 15. Paragraphs 6 and 9 set forth a confidentiality clause and a post-employment non-competition/non-solicitation clause, respectively. <u>Id.</u> ¶¶ 6, 9. Notably, the same paragraph that includes IF Uniform as an "Employer" for this purpose also includes ImageFIRST businesses from around the country, such as ImageFIRST of North Carolina LLC, ImageFIRST of Texas, ImageFIRST of Chicago LLC, et al.

The Employment Agreement upon which plaintiff relies does not prove that IF Uniform was his employer, especially when IF Uniform has denied that it has <u>any</u>

7

1    employees in California.  While plaintiff has testified that the Employment Agreement was
2    "provided to" him, the document is not signed by any party and plaintiff does not even
3    declare that he did sign it.  See Dkt. 46-1 ¶ 3.  Campanelli has not established that the
4    Employment Agreement was executed and thus binding on him.

   Even presuming that the Employment Agreement was binding, the Agreement only states that IF Uniform was one of many "Employers" for a specific and narrow purpose:  the confidentiality and non-compete clauses.  At most, the Employment Agreement shows that, even though plaintiff was employed in California, plaintiff was obligated not to compete in IF Uniform's business region (New York and New Jersey) and not to solicit its customers.

   However, these provisions in the Employment Agreement do not contemplate that IF Uniform would do business—or engage in any other activities—in California.  Compare Selhorst v. Alward Fisheries, LLC, No. C-11-3266 EMC, 2011 WL 4974568, at *4–*5 (N.D. Cal. Oct. 19, 2011) ("business relationship" between with a local resident and a "non-resident defendant," standing alone, insufficient to establish purposeful availment); Azzarello v. Navagility, LLC, No. C-08-2371 MMC, 2008 WL 4614667, at *4 (N.D. Cal. Oct. 16, 2008) (no personal jurisdiction when "the contract at issue envisioned no ongoing relationship or consequences in California").  The non-compete and confidentiality provisions of the contract—which are the only aspects that relate to IF Uniform—were thus not "purposefully directed" at California.

   More fundamentally, Campanelli's claims do not "arise out of" these contractual provisions.  The dispute here is not based on the confidentiality, non-competition, or non-solicitation clauses of the Employment Agreement.  These contractual provisions, even if binding, are simply not causally related to plaintiff's wage and hour claims.

### 2. The ImageFIRST Website

Plaintiff also relies on a shared website for ImageFIRST businesses, www.imagefirst.com, to establish specific personal jurisdiction.  While it acknowledges the Website, IF Uniform points out that IF California and other regional ImageFIRST

entities each have their own subdomains and URLs that are specific to them. Supp. Giannettino Decl., Dkt. 36-1 ¶ 3. For example, the IF California subdomains are la.imagefirst.com and san-francisco.imagefirst.com, whereas IF Uniform locations use newjersey.imagefirst.com and newyork.imagefirst.com. Id. ¶¶ 3–4.

Despite these separate subdomains, the Website does not clearly distinguish between the different ImageFIRST entities. The uniformity of the webpages suggests that each subdomain is based on a template. The subdomains for IF California simply refer to the business as "ImageFIRST". The home page, www.imagefirst.com, directs the viewer to different pages for each service location, but there is no reference to the separate entities of IF California or IF Uniform. IF Healthcare, located in King of Prussia, Pennsylvania, is listed as the "Corporate Office" to contact with inquiries.

Nonetheless, Campanelli does not cite any authority for the notion that sharing a website with a California business amounts to a purposeful direction of activities at California. Indeed, the Ninth Circuit has held that "something more" than a passive website is necessary to establish conduct purposefully directed at the forum. Pebble Beach Co., 453 F.3d at 1157; Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1129 (9th Cir. 2010) ("It is beyond dispute in this circuit that maintenance of a passive website alone cannot satisfy the express aiming prong."). The Website at issue is not interactive; a California customer cannot, for example, place orders or make reservations through it. Moreover, despite the opportunity to take jurisdictional discovery, Campanelli has not shown that, for example, IF Uniform operated all of the subdomains on the Website or took orders from California through the Website. Thus, Campanelli has not shown that IF Uniform's Website, or the fact that it shared a domain with other ImageFIRST entities, was a purposeful availment of California.[1]

---

[1] In the supplemental briefing, Campanelli points out that some subdomains contain comments from customers in other areas—e.g., the New Jersey subdomain contains a comment from a Colorado customer. See Dkt. 46-1 Ex. 3; see also id. Ex. 2, 4–5. These out-of-state website comments do not make the Website more than passive, nor do they establish any casual connection between the Website and the wage and hour claims.

As to the second requirement for jurisdiction, Campanelli has not explained how anything on the Website gives rise to his claims. The claims in this case are based on a failure to pay overtime and provide rest periods; plaintiff does not explain how sharing a website even remotely relates to the alleged misclassification of employees.

### 3. The Associate Handbook

Plaintiff's final purported contact is an "ImageFIRST Associate Handbook" which includes employment policies relating to uniforms, punctuality, vehicle usage, and the like. See Dkt. 35-3, Malloy Decl., Ex. G. It appears from the face of the Handbook that it is used by ImageFIRST entities in ten states: Pennsylvania, North Carolina, New Jersey, New York, Florida, Georgia, California, Delaware, Illinois, and Texas. Id. at 2.

Plaintiff does not identify the author of this Handbook, and defendants do not volunteer any information about which ImageFIRST entity was responsible for creating and distributing the content of the Handbook. While Campanelli argues that the Handbook policies governing employees of various ImageFIRST entities were centrally decided and issued to the affiliates, there is no evidence that IF Uniform was the controlling entity. Although afforded the opportunity to take jurisdictional discovery on this issue, plaintiff has not shown that IF Uniform created the Handbook or directed the Handbook at California. The fact that ImageFIRST entities in several states used the same Handbook does not establish any contacts that IF Uniform directed at California. Cf. Moody v. Charming Shoppes of Delaware, Inc., No. C 07-06073 MHP, 2008 WL 2128955, at *5 (N.D. Cal. May 20, 2008) ("[A] subsidiary's use of policies and handbooks created by the parent is insufficient to establish personal jurisdiction").

Assuming that IF Uniform was the author of the Handbook—although there is no actual evidence of this—that would tend to show that it set some policies that affected employees in California. There would still be a problem of causation, however. Campanelli has not demonstrated how the alleged harm he suffered—failure to be paid overtime—arose out of any of the policies in the Handbook. Nothing in the Handbook bears directly on overtime or employee classification.

### 4. Conclusion

In sum, Campanelli has failed to meet his burden to show personal jurisdiction over IF Uniform based on IF Uniform's contacts with California. Campanelli has not established the first requirement for specific jurisdiction because none of the evidence upon which he relies are contacts that IF Uniform directed at California. More importantly, Campanelli cannot meet the second requirement for specific jurisdiction because none of the relevant provisions of the Employment Agreement, the Website, or the Handbook, give rise to the claims in this suit.

Because neither of the first two prongs of the specific personal jurisdiction are met here, the court has no need to consider the third requirement of reasonableness.

## C. Specific Jurisdiction Under an Agency Theory

Campanelli argues in the alternative that even if IF Uniform's own activities do not establish sufficient minimum contacts, IF Uniform may still be subject to jurisdiction based on the contacts of IF California and IF Healthcare. This argument for jurisdiction is based on IF Uniform having "a Single Enterprise, Joint Employer, and/or Agency" relationship with IF California or IF Healthcare. This court concludes that Campanelli has not met his burden of proving even a prima facie case of an agency relationship between IF Uniform and the answering defendants.

### 1. Plaintiff's "Single Enterprise" and "Joint Employer" Arguments Are Theories of Liability, Not a Basis for Jurisdiction

First, plaintiff contends that all three defendants comprise a "single enterprise" or a "joint employer" for the purpose of determining FLSA liability, and as a result, IF Uniform is subject to personal jurisdiction because IF California is subject to jurisdiction. In short, plaintiff argues that jurisdiction is proper because IF Uniform—and presumably all of the ImageFIRST entities, for that matter—share "common policies and practices." Plaintiff argues that he is employed by all three named defendants, on the theory that the defendants are, allegedly, commonly directed, operated and managed. See Opp'n at 17–19.

11

The problem with this argument is that it confuses a basis for liability under FLSA with a basis for jurisdiction under the Due Process Clause. In support of a joint employer theory of jurisdiction, plaintiff cites Hajela v. ING Groep, N.V., where the court held that the plaintiff, suing his former Connecticut employer for wrongful termination under Title VII and related claims, met his prima facie showing of personal jurisdiction over a foreign parent corporation by offering evidence that the parent and subsidiary were joint employers. See 582 F. Supp. 2d 227, 236–38 (D. Conn. 2008).

Although Hajela seems to base personal jurisdiction on joint employer status, this appears to be the minority view. Other courts that held that the "single enterprise" and "joint employer" theories are bases for liability, not tests for personal jurisdiction. See, e.g., E.E.O.C. v. Bass Pro Outdoor World, LLC, 884 F. Supp. 2d 499, 525–26 (S.D. Tex. 2012) ("The integrated enterprise theory . . . is a liability standard . . . not a jurisdictional standard."); Langlois v. Deja Vu, Inc., 984 F. Supp. 1327, 1334 (W.D. Wash. 1997) ("[T]his Court must first find that jurisdiction exists over an out-of-state Defendant before the Court labels the out-of-state Defendant an 'employer' under the FLSA."); Heidbrink v. ThinkDirect Mktg. Group, Inc., 2014 WL 3585698 at *4 (M.D. Fla. 2014) ("A joint employer theory is relevant to establish liability against a defendant under the FLSA; it is not relevant to establish specific jurisdiction . . . .").

The court finds that the latter line of cases is more persuasive, and declines to follow Hajela. Even if IF Uniform were liable under a "joint employer" theory, this does not establish that a separate, non-resident corporate entity without minimum contacts can be hailed into a California court. See Langlois, 984 F. Supp. at 1334 ("The Court has no authority to render judgment against a party that the Court lacks personal jurisdiction over. . . . Even if a congressional statute paints as broad a liability stroke as possible, the individuals subject to liability under such a statute would still only be amenable to suit in the jurisdiction where it would be 'fair' to call them into court."). Before a court has any authority to address questions of liability, it must first be satisfied personal jurisdiction over a defendant exists.

Rather than importing a FLSA theory of liability to establish jurisdiction over IF Uniform, the court will proceed to consider whether to exercise specific jurisdiction under the agency theory, which is an established test for personal jurisdiction.  See In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation, 735 F. Supp. 2d 277, 328 (W.D. Pa. 2010) ("Since the joint employer issue is not relevant to the specific jurisdiction analysis, the court will analyze defendant parent's contacts under the three-part analysis [for minimum contacts to establish specific jurisdiction].").  Plaintiff has not made prima facie showing of either an agency or a joint employer relationship, in any event.

### 2. Plaintiff Has Not Shown an Agency Relationship

Under settled Ninth Circuit authority, the mere existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum.  See Unocal, 248 F.3d at 925 (citing Transure, Inc. v. Marsh and McLennan, Inc., 766 F.2d 1297, 1299 (9th Cir. 1985)).  "Nonetheless, if the parent and subsidiary are not really separate entities, or one acts as an agent of the other, the local subsidiary's contacts with the forum may be imputed to the foreign parent corporation."  Id. at 926 (citation and internal marks omitted).  "The agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services."  Id. at 928 (citations and internal marks omitted).

IF Uniform denies that it has any agency or parent-subsidiary relationship with IF California, and Campanelli does not provide any evidence rebutting this assertion.  In order for IF California's contacts to be imputed to IF Uniform, its control over IF California must be "so pervasive and continual that the subsidiary may be considered nothing more than an agent or instrumentality of the parent, notwithstanding the maintenance of separate corporate formalities."  Sonora Diamond Corp. v. Superior Court, 83 Cal. App.

13

4th 523, 541–42 (2000) see also Moody v. Charming Shoppes of Delaware, Inc., 2008 WL 2128955 at *7 (N.D. Cal. May 20, 2008) (imputation requires "control over day-to-day operations") .

Plaintiff's allegations are not sufficient to make out a prima facie case for personal jurisdiction. Campanelli's general allegation that ImageFIRST entities shared "common policies" does not establish any control by IF Uniform, unless Campanelli could show that IF Uniform created these policies. All Campanelli has shown is that multiple ImageFIRST entities share a common website, are listed as "Employers" for limited purposes in a common Employment Agreement, and use a shared Associate Handbook. This does not amount to pervasive and continual control over IF California, especially when there is no evidence that IF Uniform—as opposed to IF Healthcare—was responsible for creation or implementation of the shared materials. This is not the sort of day-to-day control by IF Uniform over the operations of IF California that give rises to a true agency relationship for separate corporate entities.

**CONCLUSION**

For the forgoing reasons, IF Uniform's motion to dismiss is GRANTED, and IF Uniform is hereby DISMISSED as a defendant in this case.

As the case management conference in this case was vacated in light of the motion to dismiss, Dkt. 28, the court hereby sets a case management conference for **November 17, 2016**, at 2:00 p.m., in Courtroom 3, 3rd Floor, Federal Building, 1301 Clay Street, Oakland, California. The parties shall file a joint case management statement in compliance with Local Rule 16-9 one week prior to the case management conference.

**IT IS SO ORDERED.**

Dated: September 12, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge