1  MORGAN, LEWIS & BOCKIUS LLP
   ERIC MECKLEY, SBN 168181
2  NANCY VILLARREAL, SBN 273604
   One Market, Spear Street Tower
3  San Francisco, California  94105-1126
   Telephone: 415.442.1000
4  Facsimile: 415.442.1001
   Email: eric.meckley@morganlewis.com
5  Email: nancy.villarreal@morganlewis.com

6  Counsel for Defendants
   IMAGEFIRST HEALTHCARE LAUNDRY
7  SPECIALISTS, INC.; IMAGEFIRST OF
   CALIFORNIA, LLC

8

9                    UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11

12  KYLE L. CAMPANELLI, on his own behalf        Case No. 4:15-cv-04456-PJH
    and on behalf of all others similarly situated,
13                                                **DEFENDANTS IMAGEFIRST
                      Plaintiff,                  HEALTHCARE LAUNDRY
14                                                SPECIALISTS, INC. AND IMAGEFIRST
                      vs.                         OF CALIFORNIA, LLC'S MOTION FOR
15                                                STAY OF ALL CLASS AND
    IMAGE FIRST HEALTHCARE LAUNDRY                COLLECTIVE ACTION
16  SPECIALISTS, INC.; IMAGE FIRST OF            PROCEEDINGS**
    CALIFORNIA, LLC,
17                                                Date:     June 7, 2017
                      Defendants.                 Time:     9 a.m.
18                                                Dept.:    Courtroom 3, Third Floor
19
20                                                JUDGE:    Hon. Phyllis J. Hamilton
21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that on Wednesday, June 7, 2017 at 9 a.m. (or as soon thereafter as the matter may be heard in Courtroom 3, 3rd Floor, of the above-entitled Court, Defendants ImageFIRST Healthcare Laundry Specialists, Inc. ("IF Healthcare") and ImageFIRST of California, LLC ("IF of California") (collectively, "Defendants") will move the Court to stay this action pursuant to the Court's inherent case management power and pursuant to Fed. R. Civ. P. 16(c)(2) and 26(f) relating to all matters for consideration pending the United States Supreme Court's review of the Ninth Circuit's decision in *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted* (U.S. Jan. 13, 2017).

The foregoing motion is based on this notice of motion, the accompanying memorandum of points and authorities, the declaration of James Malandra filed concurrently herewith and all exhibits attached thereto, all pleadings and motions on file in this action, the transcripts of hearing filed to date, and on such further written or oral argument as may be permitted by this Court.

**STATEMENT OF RELIEF SOUGHT**

Defendants respectfully request that this Court grant its motion to stay all class and collective action proceedings in this case until the Supreme Court issues its decision in *Morris* and the related cases *Epic Systems Corp. v. Lewis* (U.S. Jan. 13, 2017) (No. 16-285) and *NLRB v. Murphy Oil USA, Inc.* (U.S. Jan. 13, 2017) (No. 16-307).

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................................... 1

II.   RELEVANT PROCEDURAL AND FACTUAL BACKGROUND.................................. 3

III.  ARGUMENT .............................................................................................................. 6

      A.    Legal Standard ................................................................................................ 6

      B.    A Relatively Limited Stay of Class and Collective Action Proceedings
            Pending the Supreme Court's Decision Could Significantly and Materially
            Narrow the Scope of Issues, Proof, and Questions of Law in This
            Litigation. ........................................................................................................ 7

      C.    Denying the Stay Will Result in Hardship and Inequity for Defendants. ............... 9

      D.    A Temporary Stay Will Not Cause Any "Damage" to Plaintiff. ........................... 9

IV.   CONCLUSION ......................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. T-Mobile USA, Inc.*
  Case No. 2:10-cv-2373, 2010 WL 5092971 (E.D. Cal. Dec. 7, 2010) .......................................6

*Aquilino v. Home Depot, U.S.A., Inc.*
  Case No. 04-04100, 2011 WL 564039 (D.N.J. Feb. 15, 2011)................................................10

*Clinton v. Jones*
  520 U.S. 681 (1997) ..........................................................................................................6

*Epic Systems Corp. v. Lewis*
  (U.S. Jan. 13, 2017) (No. 16-285)..............................................................................1, 7, 10

*Ernst & Young LLP v. Morris*
  (U.S. Jan. 13, 2017) (No. 16-300)...................................................................................1

*Gatewood v. Koch Foods of Miss., LLC*
  Case No. 07-82, 2009 WL 8642001 (S.D. Miss. Oct. 20, 2009) .............................................10

*Hoffman-La Roche Inc. v. Sperling*
  493 U.S. 165 (1989) .........................................................................................................7

*Integrity Staffing Solutions, Inc. v. Busk*
  135 S.Ct. 513 (2014) ........................................................................................................6

*Kaltwasser v. Cingular Wireless LLC*
  Case No. C 07-00411, 2010 WL 2557379 (N.D. Cal. June 21, 2010) .....................................8

*Lewis* v. *Epic Systems Corp.*
  823 F.3d 1147 (7th Cir. 2016)..........................................................................................1

*Mackall v. Healthsource Global Staffing, Inc.*
  Case No. 16-3810-WHO, Dkt. No. 55 (N.D. Cal. Jan. 18, 2017)........................................8

*Matera v. Google Inc.*
  Case No. 15-cv-04062, 2016 WL 454130 (N.D. Cal. Feb. 5, 2016) ..................................7, 10

*McElrath v. Uber Technologies, Inc.*
  Case No. 16-cv-07241-JSC, 2017 WL 1175591 (N.D. Cal. March 30, 2017) ..............6, 7, 8, 9

*Mediterranean Enters., Inc. v. Ssangyong Corp.*
  708 F.2d 1458 (9th Cir. 1983)..........................................................................................6

*Morris v. Ernst & Young LLP*
  834 F.3d 975 (9th Cir. 2016)............................................................................... *passim*

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

4

*Murphy Oil USA, Inc.* v. *N.L.R.B.*
   808 F.3d 1013 (5th Cir. 2015)..................................................................1

5

6

*NLRB v. Murphy Oil USA, Inc.*
   (U.S. Jan. 13, 2017) (No. 16-307)......................................................1, 7, 10

7

*O'Hanlon v. 24 Hour Fitness USA, Inc.*
   Case No. 15-cv-01821, 2016 WL 815357 (N.D. Cal. March 2, 2016)................7, 10

8

9

*Stolt-Nielsen SA v. Animalfeeds Int'l Corp.*
   559 U.S. 662 (2010) ........................................................................7

10

*Stone v. Sterling Infosystems, Inc.,*
   Case No. 2:15-cv-00711, 2015 WL 4602968 (E.D. Cal. July 29, 2015) ...................9

11

12

**Statutes**

13

28 U.S.C.
   § 636(b) ...................................................................................2

14

29 U.S.C.
   § 255.......................................................................................3

15

16

   § 256.......................................................................................3

Federal Arbitration Act, 9 U.S.C.
   § 1 *et seq.* .................................................................................5

17

18

**Rules and Regulations**

19

Fed. R. Civ. P. 16(c)(2) and 26(f) ..................................................................2

20

21

Fed. R. Civ. P. 72(a) ..................................................................................2

Local Rule 72-2......................................................................................2

22

23

24

25

26

27

28

iii

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.    INTRODUCTION**

3         Plaintiff has propounded overreaching and unduly burdensome discovery that seeks,

4   among other things, the names, contact information, timekeeping and payroll records, and other

5   employment-related documents of potentially hundreds of putative class and collective action

6   members prior to any class action or collective action being certified by the Court.  However, this

7   oppressive burden on Defendants is entirely premature and unwarranted, given the fact that

8   virtually all of the putative class and collective action members that Plaintiff seeks to represent

9   have signed arbitration agreements that *preclude them from participating in any class action or*

10  *collective action* (and thus render Plaintiff's sought after discovery relevant and inappropriate).

11  The enforceability of these arbitration agreement class and collective action waivers is a lynchpin

12  issue that will dramatically impact the nature and scope of this case.

13        The question of whether arbitration agreements containing class and collective action

14  waivers may be enforced is currently before the United States Supreme Court, following the

15  Supreme Court's grant of *certiorari* in *Morris v. Ernst & Young LLP*, 834 F.3d 975 (9th Cir.

16  2016) and two related cases.  Defendants ImageFIRST Healthcare Laundry Specialists, Inc. ("IF

17  Healthcare") and ImageFIRST of California, LLC ("IF of California") (collectively,

18  "Defendants") are requesting this stay based upon the fact that the United States Supreme Court

19  has granted *certiorari* on the question of:

20        Whether an agreement that requires an employer and an employee to resolve
          employment-related disputes through individual arbitration, and waive class and
21        collective proceedings, is enforceable under the Federal Arbitration Act,
          notwithstanding the provisions of the National Labor Relations Act.
22

23  *Epic Systems Corp. v. Lewis* (U.S. Jan. 13, 2017) (No. 16-285).  *See also Ernst & Young LLP v.*

24  *Morris* (U.S. Jan. 13, 2017) (No. 16-300), and *NLRB v. Murphy Oil USA, Inc.* (U.S. Jan. 13,

25  2017) (No. 16-307).[1]

26        Although Plaintiff Campanelli himself did not sign an arbitration agreement, a central

27  _____

28    [1] The corresponding circuit court decisions are *Lewis* v. *Epic Systems Corp.*, 823 F.3d 1147 (7th
    Cir. 2016); *Morris* v. *Ernst & Young LLP*, 834 F.3d 975 (9th Cir. 2016); and *Murphy Oil USA,*
    *Inc.* v. *N.L.R.B.*, 808 F.3d 1013 (5th Cir. 2015).

1   issue in this case – whether the claims of essentially all of the putative class and collective action

2   members he seeks to represent can proceed in court – turns upon how the Supreme Court answers

3   this question.

4        Therefore, pending a ruling from the Supreme Court, this Court should temporarily stay

5   all class and collective action related discovery, motion practice, and proceedings, including but

6   not limited to any enforcement of the Magistrate Judge's Order Regarding the Parties' Joint

7   Discovery Letter Brief Dated April 18, 2017 (Dkt. # 72) ("Order").[2]  Support for Defendants'

8   request for a stay is found in the Court's inherent authority to control and manage litigation and in

9   Fed. R. Civ. P. 16(c)(2) and 26(f) relating to matters for consideration in an initial discovery plan

10  and an initial pretrial conference. Those rules contemplate that the Court and the parties should

11  know the number of potential plaintiffs, and whether the entire universe of putative collective

12  members, or only a small percentage of them, would be included before litigating whether and to

13  what extent any employee-related information should be provided; what discovery is needed and

14  from whom; what the overall scope of this case looks like; what schedule is appropriate; who will

15  be witnesses; how long any trial likely would be; whether there is any chance of the case being

16  resolved by the parties; and similar issues.  Answers to these questions necessarily depend upon

17  the impending decision by the Supreme Court.

18       As it stands now, Plaintiff is asking the Court to transform this action from one involving

19  himself and potentially a minute number of individuals to a nationwide collective action

20  encompassing potentially hundreds of putative collective action members.  If the Court allows

21  putative class and collective action proceedings to occur without regard for the impact of these

22  arbitration agreements, then unfair and unjustified (as well as costly) discovery, improper merits

23  discovery, additional motion practice, and other extensive litigation activity is sure to follow – all

24  of which the Supreme Court may likely moot.  Such needless expenditures of time, scarce judicial

25  resources, and costs can be avoided simply by waiting until the Supreme Court rules in *Morris*

26

27  [2] Concurrent with filing this Motion, Defendant has filed a separate Motion for Relief pursuant to

28  Local Rule 72-2, FRCP 72(a), and 28 U.S.C. § 636(b)(1)(A) requesting that the Court review and modify the Magistrate's Order because it is clearly erroneous and contrary to law (i.e., a separate and independent reason from this requested stay).

Defendants' Motion for Stay
CASE NO. 4:15-CV-04456-PJH

1   and *Epic Systems*.  The Court should revisit the proper extent of discovery and disclosure of class

2   and collective contact information only after the parties and the Court have guidance from the

3   Supreme Court.

4   **II.       RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**

5          Plaintiff filed a Complaint in the Northern District of California on September 28, 2015,

6   asserting California state law and Rule 23 class claims and FLSA Section 216(b) collective action

7   claims.  Dkt. #1.  On December 16, 2015, Plaintiff filed a First Amended Complaint, adding

8   claims under the California Private Attorney's General Act ("PAGA").  On February 2, 2016,

9   Defendants filed an Answer to Plaintiff's First Amended Complaint.  Dkt. # 23.  In their Answer,

10  Defendants included as an affirmative defense the fact that some of the current and former

11  employees Plaintiff sought to represent had signed arbitration agreements containing class and

12  collective action waivers.  *Id*.  Defendants also reiterated in the parties' joint case management

13  conference statement the fact that putative class/collective action members had signed valid and

14  binding arbitration agreements that included class and collective action waivers. *See* Dkt. #54,

15  4:13-16, 7:27-28.

16         The "drivers" that Plaintiff seeks to represent held positions entitled Customer Advocate

17  and Route Specialist.  During the relevant statute of limitations period for Plaintiff's putative

18  California Rule 23 class (i.e., September 28, 2011 to present), in addition to Plaintiff, there were

19  approximately fifteen (15) current and former Customer Advocates and Route Specialists

20  employed by ImageFIRST of California LLC in California.  Of those persons, approximately

21  seven (7) signed a "Dispute Resolution Agreement" that was a stand-alone arbitration agreement,

22  and all fifteen signed an Employment Agreement that included a provision requiring arbitration of

23  claims.  Declaration of James Malandra ("Malandra Decl."). at ¶ 4, Exs. 1-2.

24         During the relevant statute of limitations period for Plaintiff's putative FLSA collective

25  action (i.e., no earlier than May 2014 to the present), there were approximately one hundred (100)

26  current and former Customer Advocates and Route Specialists employed by various, non-party

27  ImageFIRST entities throughout the United States.  Of those persons, approximately sixty-four

28  (64) signed a "Dispute Resolution Agreement" that was a stand-alone arbitration agreement, and

1  all one hundred (100) signed an Employment Agreement that included a provision requiring

2  arbitration of claims.  Malandra Decl. at ¶ 5, Exs. 2-3.[3]

3        Therefore, in total 100% of the putative class and collective action members have signed

4  some form of arbitration agreement, and approximately 71% of the putative class and collective

5  action members have signed a stand-alone "Dispute Resolution Agreement" arbitration

6  agreement.

7        The Dispute Resolution Agreement signed by putative class and collective action

8  members provides that all disputes arising out of putative class/collective action members'

9  employment must be resolved only through binding *individual* arbitration.  Malandra Decl. at ¶¶

10  4-5, Exs. 1, 3.  Specifically, the agreements state:

11  > This Agreement requires all disputes to be resolved only through final and
   > binding arbitration, as opposed to a court or jury trial.  Except as otherwise
12  > provided in this Agreement, such disputes include without limitation disputes
   > arising out of or relating to Employee's employment relationship, and disputes
13  > about trade secrets, unfair competition, compensation, breaks and rest periods,
   > termination, discrimination, harassment or retaliation, and claims arising under
14  > the Civil Rights Act of 1964, 42 U.S.C. §1981, Americans With Disabilities Act,
   > Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor
15  > Standards Act, Employee Retirement Income Security Act (except for claims for
   > employee benefits under any benefit plan sponsored by ImageFIRST and covered
16  > by the Employee Retirement Income Security Act of 1974 or funded by
   > insurance), Uniform Trade Secrets Act, and all applicable state and federal
17  > statutes, if any, addressing the same, similar or related subject matters, and all
   > other federal and state statutory, contract, tort, Constitutional and common law
18  > claims (but excluding worker's compensation, unemployment insurance, and state
   > disability insurance claims).

19
20  > …

21  > The Employee and ImageFIRST agree they will not bring any dispute in
   > arbitration on a class, collective, or private attorney general representative action
22  > basis.  **There will be no right or authority for any dispute to be brought,
   > heard or arbitrated as a class action ("Class Action Waiver").**  This Class
23  > Action Waiver shall not be severable from this Agreement in any case in which

---

24  [3] The statute of limitations for putative collective action claims under the FLSA was not tolled by
   the filing of Plaintiff's Complaint and continues to run, thus the earliest statute of limitations
25  period would be three-years prior to the present date.  *See* 29 U.S.C. §§ 255, 256. Even assuming,
   however, the statute of limitations had been tolled and putative collective action FLSA claims
26  began on September 28, 2012, there were approximately 131 current and former Customer
   Advocates and Route Specialists employed by various, non-party ImageFIRST entities
27  throughout the United States during that period, and of those persons, approximately eighty-four
   (84) signed a "Dispute Resolution Agreement" that was a stand-alone arbitration agreement, and
28  all 131 signed an Employment Agreement that included a provision requiring arbitration of
   claims.  Malandra Decl. at ¶7.

(1) the dispute is filed or pursued as a class action, and (2) a civil court of competent jurisdiction finds the Class Action Waiver is unenforceable.  In such cases, the class action must be litigated in a civil court of competent jurisdiction.

**There will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action ("Collective Action Waiver")**.  This Collective Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed or pursued as a collective action, and (2) a civil court of competent jurisdiction finds the Collective Action Waiver is unenforceable.  In such cases, the collective action must be litigated in a civil court of competent jurisdiction.

…

ImageFIRST may, in a civil court, lawfully seek enforcement of this Agreement and the Class Action Waiver, Collective Action Waiver and/or Private Attorney General Representative Action Waiver under the Federal Arbitration Act and applicable law, and seek the dismissal of such class, collective and/or representative actions or claims

*Id*. at p. 2-3 (emphasis added).[4]

The Employment Agreement signed by putative class and collective action members contains a provision (in Paragraph 10) which provides in pertinent part that "any controversy or claim arising out of, or relating to this Agreement, or relating to this Agreement, or breach of, shall be settled by arbitration." Malandra Decl. at ¶¶ 4-5 , Exs 1, 3. The Employment Agreement states that it"shall be governed and construed in accordance with the law of the State of Delaware." *Id*.

Plaintiff served Requests for Production of Documents and Interrogatories on Defendants, seeking, among other things, the names, contact information and other employment-related information as to all putative class and collection action members.  In response, Defendants objected to providing such information, in part because providing the names and contact information of putative class collection action members would be premature given that a collective action had not been certified and because these persons had signed arbitration agreements that precluded them from participating in any class or collective action.  On April 10,

---

[4] The Dispute Resolution Agreement further provides that it "is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*.("FAA"). To the extent any court of competent jurisdiction finds that the FAA does not apply, then the law of the state in which the Employee resided at the time he or she signed the Agreement shall apply and govern."  Here, the putative collective action members resided in at least seven (7) different states outside of California.

5

1    2017, the Parties filed a joint discovery letter brief, in which Plaintiff asked the Court to reject

2    Defendants' objections to producing class contact information.  Dkt. # 70.  Defendants argued

3    that class-wide discovery was premature, in part because all putative collective/class members

4    who signed arbitration agreements could not participate in the litigation and must be excluded

5    from any discovery.  *Id*. at p. 3.  On April 18, 2017, the Magistrate Judge ordered Defendants to

6    produce documents and provide information for *all* putative class and collective members,

7    *regardless* of whether such persons had signed arbitration agreements and were required to

8    individually arbitrate any claims they might have.  Dkt. # 72.

9          The Supreme Court will hear argument on the pending arbitration cases in October 2017.

10   The scope of this case will be dramatically shaped by the Supreme Court's decision, which will

11   likely be issued before the end of 2017.  Many, if not most, cases argued early in the Supreme

12   Court's term are decided by December or January.  A good example is another recent FLSA case,

13   *Integrity Staffing Solutions, Inc. v. Busk*, 135 S.Ct. 513 (2014). In *Busk*, similar to here, the

14   Supreme Court granted *certiorari* on March 3, 2014. (U.S. No. 13-433).  After negotiation of a

15   briefing schedule, the Supreme Court moved argument until the next term, on October 8, 2014,

16   and decided the case on December 9, 2014.  *Id.*  Therefore, in the present case, it is likely that a

17   decision regarding the enforceability of class and collective action waivers in arbitration

18   agreements will be reached in around seven (7) months.  Given this relatively short time period,

19   and the likelihood that the Supreme Court will rule that such waivers in arbitration agreements are

20   enforceable, ordering a stay in the present case will benefit the Court and the parties.

21   **III.**   **ARGUMENT**

22         **A.**    **Legal Standard**

23         The power to stay proceedings is incidental to the power inherent in every district court to

24   control its own docket.  *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*,

25   299 U.S. 248, 254, 57 S. Ct. 163 (1936)).  This power includes staying an action "pending

26   resolution of independent proceedings which bear upon the case."  *Mediterranean Enters., Inc. v.*

27   *Ssangyong Corp.,* 708 F.2d 1458, 1465 (9th Cir. 1983).  The Court should weigh three factors in

28   determining whether to grant a stay under these circumstances:  (1) the possible "damage" that

1   may result from granting a stay; (2) the hardship that a party may suffer in being required to go

2   forward; and (3) the orderly course of justice "measured in terms of the simplifying or

3   complicating of issues, proof, and questions of law which could be expected to result from a

4   stay". *Alvarez v. T-Mobile USA, Inc.*, Case No. 2:10-cv-2373, 2010 WL 5092971 (E.D. Cal. Dec.

5   7, 2010) (quoting *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962)); *McElrath v. Uber*

6   *Technologies, Inc.*, Case No. 16-cv-07241-JSC, 2017 WL 1175591 (N.D. Cal. March 30, 2017)

7   (granting motion to stay case pending Supreme Court's decision in *Morris* because it would

8   directly impact defendant's motion to compel arbitration of plaintiff's claims).  Those factors

9   each favor the limited stay requested by Defendants here.

10          The foregoing authority establishes that the inquiry is whether an intervening decision

11   may "*simplify*" the proceedings, not whether it will dispose of all claims or issues.  *McElrath*,

12   2017 WL 1175591, at *6 (emphasis added).  While Plaintiff may argue that the Ninth Circuit's

13   decision in *Morris* could be affirmed – which Defendants suggest is remote – that is not grounds

14   for objecting to Defendants' proposed stay.  *See, e.g., O'Hanlon v. 24 Hour Fitness USA, Inc.*,

15   Case No. 15-cv-01821, 2016 WL 815357 at *4 (N.D. Cal. March 2, 2016) (staying proceedings

16   following Supreme Court's decision to hear standing issue, notwithstanding the court's

17   determination that Ninth Circuit law was currently controlling).

18   **B.    A Relatively Limited Stay of Class and Collective Action Proceedings Pending
         the Supreme Court's Decision Could Significantly and Materially Narrow the
19        Scope of Issues, Proof, and Questions of Law in This Litigation.**

20          The touchstone of the FLSA certification process is judicial efficiency.  *Hoffman-La*

21   *Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (the purpose of allowing a collective action is to

22   provide for "efficient resolution in one proceeding of common issues of law and fact arising from

23   the same alleged [unlawful conduct]").  Staying this Court's determination of whether a collective

24   or class action is appropriate until after phased discovery and the Supreme Court's ruling in

25   *Murphy Oil*, *Lewis*, and *Morris* will markedly simplify the issues, proof, and questions of law in

26   this action.  As one example, a stay will ensure that this Court has the benefit of the Supreme

27   Court's guidance on key issues, including whether the class and collective action waivers

28   expressly stated in the Dispute Resolution Agreement and inherent within the Employment

7

1   Agreement's arbitration provision (*see Stolt-Nielsen SA v. Animalfeeds Int'l Corp.*, 559 U.S. 662

2   (2010)) are enforceable under the NLRA.  *See Matera v. Google Inc.*, Case No. 15-cv-04062,

3   2016 WL 454130 at *3 (N.D. Cal. Feb. 5, 2016) (granting stay after finding that Supreme Court's

4   decision, even if not dispositive, was "likely to be instructive in this case, regardless of whether it

5   is formally controlling").  There is no doubt that, whichever way the Supreme Court rules, that

6   the eventual holding and its rationale will bear significantly on the scope of this case.

7          This Court has agreed to defer rulings on class certification – effectively staying the action

8   in its entirety – when, as here, issues pending before the Supreme Court may impact the size and

9   scope of a putative class or collective action.  *See, e.g., Kaltwasser v. Cingular Wireless LLC*,

10  Case No. C 07-00411, 2010 WL 2557379 at *2 (N.D. Cal. June 21, 2010) (deferring decision on

11  plaintiff's motion for class certification, despite the fact that such deferral "effectively would

12  amount to a stay of the entire action" pending Supreme Court's decision to hear issues potentially

13  affecting size of plaintiff's proposed class).  In the present case, the Supreme Court's decision

14  will determine whether an arbitration agreement containing a class and collective action waiver

15  violates the NLRA.  That decision, in turn, will significantly impact the potential size of the

16  putative FLSA and Rule 23 collective and class actions sought in this case.  If the Supreme Court

17  agrees that class and collective action waivers in arbitration agreements are enforceable, then only

18  approximately 36 putative collective action members could theoretically elect to opt-in to a FLSA

19  case if the Court were to grant conditional certification of a collective action, and only 8 putative

20  class action members could theoretically be included in any class if the Court were to grant

21  certification of a Rule 23 class action. *See* Malandra Decl. ¶¶ 4-5.

22         The procedural posture and circumstances of this Court's decision in *McElrath* are *nearly*

23  *identical* to those presented here.  2017 WL 1175591.  In *McElrath*, the defendant moved to

24  compel the named plaintiff to individual arbitration. *Id.* at *1.  Plaintiff opposed that motion on

25  the ground that the class action waiver in plaintiff's arbitration agreement violated NLRA. *Id.* at

26  *3.  After the plaintiff filed the case, the Supreme Court granted *certiorari* in *Morris* to decide

27  whether the Ninth Circuit erred by holding that the NLRA prohibits enforcement of a class action

28  waiver.  In weighing the potential harm to defendants of not staying the case, Magistrate Judge

1    Scott Corley acknowledged that "the outcome of *Morris* will have a significant impact on this

2    case." *Id.* at *6.  Recognizing the unmistakable burden of litigating a nationwide class action, the

3    Court stayed the action, agreeing with the defendant that "granting the stay would conserve

4    resources which would be unnecessarily expended reviewing the adequacy of the pleadings,

5    resolving discovery disputes, and considering class certification." *Id.* (*see also Mackall v.*

6    *Healthsource Global Staffing, Inc.*, Case No. 16-3810-WHO, Dkt. No. 55 (N.D. Cal. Jan. 18,

7    2017) (granting stay pending the decision in *Morris* because it was a "central issue in this case").

8           In the present case, as in *McElrath*, the Supreme Court's decision will resolve a central

9    issue in this case, and there can be no doubt that the decision has the potential to profoundly

10   decrease the burden of this action on the Court and the litigants.

11          **C.      Denying the Stay Will Result in Hardship and Inequity for Defendants.**

12          The overwhelming majority of the putative collective and class members waived their

13   rights to bring or be included within a class/collective action claim in court.  The pending

14   Supreme Court decision could preserve this Court's limited resources by confirming that these

15   individuals must individually arbitrate any claims they wished to bring, as opposed to

16   participating in any class or collective action.  It would be entirely inappropriate for the Court to

17   allow the disclosure of private contact information, as well as employment-related information

18   and data, for the large majority of putative class and collective action members whose claims are

19   subject to individual arbitration – any litigation regarding such persons claims may very well be

20   rendered moot by the Supreme Court's decision.  *See Stone v. Sterling Infosystems, Inc.*, Case No.

21   2:15-cv-00711, 2015 WL 4602968 (E.D. Cal. July 29, 2015) (granting stay pending Supreme

22   Court decision that would determine whether plaintiff had standing because the court saw "no

23   reason why Plaintiff should be allowed to conduct discovery on this large class, thereby forcing

24   Defendant to incur unnecessary expenses, until it can be established that this case will be

25   proceeding."); *McElrath*, 2017 WL 1175591 at *6 (granting stay pending resolution of Supreme

26   Court case that "would conserve resources which would be unnecessarily expended reviewing the

27   adequacy of the pleadings, resolving discovery disputes, and considering class certification").

28   Such needless expenditures of time, judicial resources, and costs can be avoided simply by

1  waiting approximately seven (7) months until the Supreme Court issues its decision.

2  **D.  A Temporary Stay Will Not Cause Any "Damage" to Plaintiff.**

3  In contrast to the burdens that would be imposed without a stay, Plaintiff will not be

4  "damaged" if the Court grants the motion for a partial stay.  *See, e.g., McElrath*, 2017 WL

5  1175591 at *5 (finding any possible harm to plaintiff in staying the case pending the outcome of

6  *Morris* would be minimal because "the stay is of short, not indefinite, duration"); *Matera*, 2016

7  WL 454130 at *4 (granting stay in putative class action where the "possible damage to Plaintiff

8  from a temporary stay is minimal" in part because the case was "at an early stage of litigation");

9  *O'Hanlon*, 2016 WL 815357, at *4 (finding minimal damage to plaintiff because a brief stay of

10  one year or less was "unlikely to case material harm").

11  Plaintiff may argue that a temporary stay should be denied because it could impact the

12  statute of limitations for absent members of the putative collective action.  That argument would

13  be misplaced, as non-parties who never have expressed any interest in pursuing this case have no

14  rights for this Court to protect.  To the contrary, it is *Defendants* who are the litigants in this case

15  and thus entitled to due process.  *See Aquilino v. Home Depot, U.S.A., Inc.*, Case No. 04-04100,

16  2011 WL 564039, at *10-11 (D.N.J. Feb. 15, 2011) (decertifying collective action based in part

17  on concerns relating to defendant's due process rights); *Gatewood v. Koch Foods of Miss., LLC*,

18  Case No. 07-82, 2009 WL 8642001, at *20-21 (S.D. Miss. Oct. 20, 2009) (same).

19  ## IV.  <u>CONCLUSION</u>

20  Defendants respectfully request that the Court grant their motion for a stay until the

21  Supreme Court issues its decision in *Morris*, *Lewis*, and *Murphy Oil*; and for all other relief in

22  favor of Defendants that the Court finds appropriate.

23  Dated:  May 2, 2017                        MORGAN, LEWIS & BOCKIUS LLP

24

25                                            By    */s/ Eric Meckley*
                                                    _____
26                                                  Eric Meckley
                                                    Attorneys for Defendants
27

28