UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE L. CAMPANELLI,<br><br>    Plaintiff,<br><br>    v.<br><br>IMAGE FIRST HEALTHCARE LAUNDRY SPECIALISTS, INC., et al.,<br><br>    Defendants. | Case No. 15-cv-04456-PJH<br><br>**ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 91 |

Plaintiff's motion for partial summary judgment came on for hearing before this court on February 7, 2018. Plaintiff appeared through his counsel, David Feola and Brian Malloy. Defendants appeared through their counsel, Kathryn Nazarian. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby denies in part plaintiff's motion for summary judgment for the reasons discussed below. Pursuant to agreement with the parties, the court withholds ruling on the balance of plaintiff's motion until plaintiff has had the opportunity to take additional discovery. This order terminates plaintiff's motion without prejudice to plaintiff re-noticing the motion with respect to the issues that the court does not rule on below.

## BACKGROUND

**A. Factual Allegations**

This is a putative class and collective action based on the Fair Labor Standards Act ("FLSA") and the California Labor Code. Plaintiff Kyle Campanelli was employed by ImageFIRST of California, LLC as a delivery person from March 2014 to March 2015.

Dkt. 11, First Amended Complaint ("FAC") ¶¶ 4, 33. The FAC named three ImageFIRST companies as defendants: (1) ImageFIRST Uniform Rental Service, Inc. ("IF Uniform"); (2) ImageFIRST Healthcare Laundry Specialists, Inc. ("Corporate"); and (3) ImageFIRST of California, LLC ("IF California"). IF Uniform was subsequently dismissed for lack of personal jurisdiction.

Plaintiff's primary job duty was to pick up soiled laundry from ImageFIRST customers and deliver it to a laundry center, and to pick up clean laundry from the laundry center and deliver it to ImageFIRST customers.[1] FAC ¶ 33. Campanelli alleges that he worked over forty hours a week but was denied meal and rest periods, and was never paid overtime compensation. FAC ¶ 36.

Campanelli seeks to represent similarly situated delivery drivers of ImageFIRST entities nationwide in a collective action for failure to pay overtime wages under the FLSA. FAC ¶¶ 4, 37–41. He also seeks to represent a Rule 23 class of similarly situated delivery persons who were misclassified as exempt under California labor laws. FAC ¶¶ 42–51. Plaintiff defines similarly situated employees as "past and present employees of ImageFIRST who engage/were engaged in the pick-up and delivery of ImageFIRST products to and from customers intrastate however that employment was denominated . . . and who were classified as exempt from Federal and state overtime laws" (herein, "delivery drivers"). FAC ¶ 7.

**B.    Procedural History**

On May 2, 2017, defendants filed a motion to stay all class and collective action proceedings until the Supreme Court issues a decision in Epic Systems Corp. v. Lewis, No. 16-285, and the cases consolidated with Epic, including the Ninth Circuit's decision in Morris v. Ernst & Young, LLP, 834 F.23d 975 (9th Cir. 2016). Dkt. 77. On July 7, 2017, the court granted in part and denied in part defendants' motion. The court stayed "all class and collective action proceedings pending the decision in Epic, with the single

---

[1] ImageFIRST refers to entities bearing or using the ImageFIRST mark.

exception of the 'joint employer' issue." Dkt. 88 at 8.  On that issue, the court allowed plaintiff to take discovery and file a motion for summary judgment addressing "which ImageFIRST entities, beyond the named defendants, may be held liable for the alleged FLSA violations based on a 'joint employer' theory, and thus which employees are properly included in the putative class." Id. at 10.

Plaintiff's motion for summary judgment on this issue is now before the court. Plaintiff's theory is that for the purposes of FLSA liability, Corporate is a joint employer of all delivery drivers employed by 27 ImageFIRST entities across the country.  Specifically, 17 ImageFIRST entities that have a franchisee-franchisor relationship with Corporate and 10 entities that are "Affiliates" of Corporate.[2]  According to plaintiff, because Corporate is a joint employer of these delivery drivers, the putative collective action members employed by all ImageFIRST entities should be given first stage notice of this putative collective action pursuant to 29 U.S.C. § 216(b).

In support of defendants' opposition to plaintiff's motion, defendants attached declarations from eleven owners of ImageFIRST franchisees.  Though defendants previously disclosed the names of ImageFIRST franchisee entities, see Dkt. 91-5, Ex. D at 8-9, defendants did not disclose the identities of the declarants as required by Fed. R. Civ. P. 26(a) or Rule 26(e).  For that reason, plaintiff had no opportunity, other than the 17 day period between the opposition and the reply, to conduct discovery with regards to these witnesses.

Because plaintiff did not have the opportunity to test the veracity of those declarations, at the hearing the court found it could not fairly rule on the franchisee part of plaintiff's motion.  After discussion with plaintiff's counsel on this issue, the court determined it would not decide whether Corporate is a joint employer of delivery drivers employed by franchisees until after plaintiff had the opportunity to take discovery from

---

[2] In September 2017, Corporate acquired one of the franchisee entities. Dkt. 95-13 ¶ 3. As there is no evidence indicating that franchisee's relationship to Corporate, the court continues to treat that entity as a franchisee.

3

those witnesses. For the sake of efficiency, that discovery will take place once the Epic-related stay is lifted.

Accordingly, this order only addresses whether plaintiff has established as a matter of law that Corporate is a joint employer of ImageFIRST Affiliate delivery drivers under the FLSA.

**C.  Affiliates**

Jerry Berstein owns Corporate and Jerry Berstein and Jeff Berstein are directors of all 10 Affiliate entities. Dkt. 91-3, Ex. B at 62:8-18, 96:14-17 (Corporate CFO James Malandra deposition transcript). Combinations of Berstein family members and trusts of the same own all 10 Affiliates, which are separate business entities. Id. at 61:9-66:7; Dkt. 95-4, Ex. 4, Malandra Decl. ¶¶ 15-16. Corporate itself does not own any part of those entities. Malandra Decl. ¶ 15.

In total, there are between 125 and 140 Affiliate delivery drivers operating in more than ten states. Dkt. 91-5, Ex. D (Corporate's Interrogatory Responses); Ex. B at 114:19-115:4. Each Affiliate, rather than Corporate, employs its own delivery drivers. Malandra Decl. ¶ 16.

Corporate's 2012-2014 financial statement states that stockholders of the company are also "primary stockholder[s] or member[s] of several other affiliated entities all of which operate under common management control." Dkt. 91-16, Ex. N; see also Dkt. 91-6, Ex. E at 179 ("Franchise Disclosure Document"; "affiliate means an entity controlling, controlled by, or under common control with us . . ."). However, Corporate's CFO, James Malandra, testified that these statements mean only that the entities have "the same board of directors and same officers." Ex. B at 97:12-99:1. Affiliates have their own general managers and often subordinate managers who manage and operate the business operations, including controlling the day-to-day job duties of the delivery drivers. Malandra Decl. ¶¶ 17-18.

**DISCUSSION**

4

## A. Legal Standard

### 1. Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Id. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. Id.

At summary judgment, the court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014); Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).

### 2. "Joint Employer" Liability Under The FLSA

"In order to be covered by the FLSA's overtime rules, employees must be engaged in commerce or in the production of goods for commerce, or . . . employed in an enterprise engaged in commerce." Chao v. A–One Medical Services, Inc., 346 F.3d 908, 914 (9th Cir. 2003) (ellipses in original). More than one entity may constitute a single enterprise for purposes of FLSA coverage when three elements are present: (1) related

activities; (2) unified operation or common control; and (3) common business purpose. Id. at 914-15; 29 U.S.C. § 207(r)(1).

Two or more employers may be "joint employers" for the purposes of the FLSA. Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1469-70 (9th Cir. 1983), disapproved of on other grounds by Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, (1985). "All joint employers are individually responsible for compliance with the FLSA." Id. (citing 29 C.F.R. § 791.2(a)).

The Ninth Circuit applies one of two tests to determine whether a second entity is a "joint employer" under the FLSA. See Guifu Li v. A Perfect Day Fran., Inc., 281 F.R.D. 373, 400 n. 26 (N.D. Cal. 2012); Chao, 346 F.3d at 914. The applicable test depends on whether the purported joint employer is in a "vertical joint employment relationship" or a "horizontal joint employment relationship." See Guifu Li, 281 F.R.D. at 400 n. 26.

When the purported joint employer is in a vertical joint employment relationship, the "economic reality" test applies. Chao, 346 F.3d at 917. Under the "economic reality" test, courts apply Bonnette's four factor test. Under that test, the court's analysis is guided by "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Bonnette, 704 F.2d at 1470. Some courts also apply additional factors. See, e.g., Gessele v. Jack in the Box, Inc., 2016 WL 7223324, at *5-14 (D. Or. Dec. 13, 2016); see also Torres-Lopez v. May, 111 F.3d 633, 642 (9th Cir. 1997) (applying eight regulatory factors that overlap with the Bonnette factors). Ultimately, the court must base its determination on "the circumstances of the whole activity." Bonnette, 704 F.2d at 1470.

However, the Ninth Circuit has held that the "economic reality" test is not applicable when the companies are in a "horizontal" joint employment relationship. Chao, 346 F.3d at 917-18. In this situation, "the relevant regulations primarily guide [the court's] determination of joint employment status." Id. Specifically, 29 C.F.R. § 791.2(b):

6

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

Under subsection (b)(3), "joint employment will generally be considered to exist when 1) the employers are not "completely disassociated" with respect to the employment of the individuals and 2) where one employer is controlled by another or the employers are under common control." Chao, 346 F.3d at 917-18.

**B.     Analysis**

**1.     Whether The Vertical or Horizontal Test Applies**

The parties do not dispute that the FLSA's "enterprise" requirement is met. The parties instead dispute whether Corporate is a joint employer under the FLSA. Plaintiff asserts that the horizontal test set forth in Chao applies and defendants assert the vertical test set forth in Bonnette applies. As explained below, the court finds that the vertical test applies.

A vertical joint employment relationship exists when "a company has contracted for workers who are directly employed by an intermediary company." Chao, 346 F.3d at 917. The Department of Labor has stated that vertical joint employment exists "when an employee of one employer . . . is also, with regard to the work performed for the intermediary employer, economically dependent on another employer." Opinion Letter

7

1   from U.S. Dep't of Labor, Wage & Hour Div., 2016 WL 284582, at *4 (Jan. 20, 2016)

2   ("DoL Opinion") (citing Chao).[3] "The vertical joint employment analysis is used to

3   determine, for example, whether a construction worker who works for a subcontractor is

4   also employed by the general contractor, or whether a farmworker who works for a farm

5   labor contractor is also employed by the grower." Id. at *4. The vertical analysis has also

6   been applied to parent-subsidiary and franchisee-franchisor relationships. Radford v.

7   Telekenex, Inc., No. C10-812RAJ, 2011 WL 3563383, at *3 (W.D. Wash. Aug. 15, 2011)

8   (parent-subsidiary); Singh v. 7-Eleven, Inc., No. C-05-04534RMW, 2007 WL 715488, at

9   *3 (N.D. Cal. Mar. 8, 2007) (franchisee-franchisor). "Unlike in horizontal joint employment

10  cases, where the association between the potential joint employers is relevant, the

11  vertical joint employment analysis instead examines the economic realities of the

12  relationships between" the employee and the purported joint employer. DoL Opinion,

13  2016 WL 284582, at *4.

14        On the other hand, horizontal joint employment exists when "two (or more)

15  employers each separately employ an employee and are sufficiently associated with or

16  related to each other with respect to the employee." Id. at *4 (citing § 791.2); Chao, 346

17  F.3d at 913, 917-18 (applying horizontal test where employees applied for and signed

18  employment contracts with both companies). "[T]here is typically an established or

19  admitted employment relationship between the employee and each of the employers, and

20  often the employee performs separate work or works separate hours for each employer.

21  Thus, the focus of a horizontal joint employment analysis is the relationship between the

22  two (or more) employers." DoL Opinion, 2016 WL 284582, at *4. Examples of such a

---

[3] Though this DoL Opinion was withdrawn by the Department of Labor, the DoL specifically noted that "Removal of the [DoL Opinion] does not change the legal responsibilities of employers under the Fair Labor Standards Act . . . as reflected in the Department's long-standing regulations and case law." Dkt. 94-2, Ex. B (copy of DoL's website); United States v. 14.02 Acres of Land More or Less in Fresno Cty., 547 F.3d 943, 955 (9th Cir. 2008) ("Judicial notice is appropriate for records and "reports of administrative bodies."). The court denies defendants' other requests for judicial notice as moot.

8

1 relationship "may include separate restaurants that share economic ties and have the
2 same managers controlling both restaurants" or "where a farmworker picks produce at
3 two separate orchards and the orchards have an arrangement to share farmworkers." Id.
4 at *4-5; see also Murphy v. Heartshare Human Servs. of New York, 254 F. Supp. 3d 392,
5 397–98 (E.D.N.Y. 2017) (discussing vertical and horizontal joint employment at length).

In Chao, for example, the court applied the horizontal analysis. There, an acquisition of one health service company by another was put on hold pending certain regulatory certificates. Chao, 346 F.3d at 912. During this stasis, the two companies began to merge operations, including transferring patients, sharing employees, and sharing administrative and supervisory staff. Id. at 912-13. The companies did not have a formal employee sharing arrangement. Id. at 913. Instead, employees completed applications for employment and signed employment agreements with each company, and received separate paychecks from each companies. Id.

Pointing to Chao, plaintiff argues that the horizontal analysis applies to the Affiliates because the entities share operations and are under common ownership. The court disagrees.

First, there is little evidence suggesting Affiliates "share operations" with Corporate. Though the Berstein family owns the Affiliates and the entities share "the same board of directors and same officers," Ex. B at 97:12-98:15, the undisputed evidence shows that each Affiliate employs its own delivery drivers, Malandra Decl. ¶ 16. This stands in direct contrast to Chao and the above horizontal relationship examples where an "established or admitted employment relationship" existed "between the employee and each of the employers." DoL Opinion, 2016 WL 284582, at *4. Similarly, plaintiff has presented no evidence that the Affiliates and Corporate have an employee sharing agreement, that any Affiliate delivery driver performs work directly for Corporate, or that the Affiliates share managers. In fact, evidence shows that each Affiliate has its own general manager who is responsible for management and operations of that entity's business. Malandra Decl. ¶ 17.

Second, there is evidence that a vertical relationship exists between Corporate and the Affiliates. The Affiliate delivery drivers are employed directly by an intermediary company, i.e., the Affiliate, but, if plaintiff is correct, are economically dependent on another employer, i.e. Corporate. This relationship is similar to the subcontractor and farmworker examples above. Further, while Corporate does not own the Affiliates directly, the Berstein family and related entities do own all the Affiliates. This ownership relationship is similar to franchisor-franchisee and parent-subsidiary relationships, where courts have applied the Bonnette factors. Singh, 2007 WL 715488, at *3 (applying Bonnette to franchisee-franchisor); Gessele, 2016 WL 7223324, at *7. (same); Radford, 2011 WL 3563383, at *3 (applying vertical relationship test to parent-subsidiary companies).

Accordingly, the court finds that Corporate and the Affiliates are in a vertical relationship and looks to Bonnette's four factor test to determine whether Corporate is a joint employer of Affiliate delivery drivers.

**2. Plaintiff Has Failed To Show That As A Matter of Law Corporate Is A Joint Employer of Affiliate Drivers Under the FLSA.**

**a. The Bonnette Test**

Under the Bonnette test, the court's analysis is guided by "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Bonnette, 704 F.2d at 1470. Ultimately, the court must base its determination on "the circumstances of the whole activity." Bonnette, 704 F.2d at 1470. The court finds that though plaintiff has met his burden on the first, third, and fourth factor, there remain triable issues of fact as to whether Corporate "supervised and controlled" the delivery drivers. Accordingly, the court only discusses that factor.

Plaintiff has presented some evidence on the amount of supervision and control Corporate exercises over Affiliate delivery drivers. For example, Corporate requires (i)

10

the Affiliates use common employment and hiring documentation (see Ex. B at 167:3-169:13; Dkt. 91-8, Ex. G (offer letter); Dkt. 91-9, Ex. H (employment agreement); Dkt. 91-20, Ex. R (new hire packet check list)), and (ii) Affiliate delivery drivers are subject to a Corporate provided employee handbook and other Corporate policies such as uniform cellular phone policies, (see Ex. B at 174:6-22, 176:23-177:4, 178:13-179:3; 212:6-213:6; Dkt. 91-7, Ex. F (associate handbook)). Corporate also expects that the Affiliates train their delivery drivers using materials that Corporate designs and provides. See Ex. B 156:17-157:5, 210:12-211:19; 231:25-235:5.

Though that evidence shows Corporate does have some relationship to the Affiliate delivery drivers, courts have held that similar high level policies do not establish the purported joint employer supervises and controls the plaintiff-employees. See, e.g., Singh, 2007 WL 715488 at *4-5 (finding no joint employment where franchisee exclusively arranged work shifts according to operational demands of store but franchisor set uniform and food service standards, store hours, and inspected franchisee employees to ensure compliance); Lovett v. SJAC Fulton IND I, LLC, 2016 WL 4425363, *13-14 (N.D. Ga. Aug. 22, 2016) (finding no joint employment where local restaurant manager was responsible for daily operations, supervision and scheduling of employees, even though district managers engaged in limited supervision over each store); Barth v. Border Foods, 2012 WL 12895688, *4 (D. Minn. Mar. 19, 2012) (denying plaintiff's motion for summary judgment where general managers managed day-to-day operations, plaintiff's facts "simply show that the [companies] used the same or similar forms and share similar policies" as set by entity with common ownership).

Further, the amount of control Corporate actually exercises over the Affiliate delivery drivers is disputed. Like in the cases above, each Affiliate has a general manager and sometimes subordinate managers that are "directly responsible for the management and operation of the Affiliated Entity's business operations," including the "specific day-to-day duties" of the delivery drivers. Malandra Decl. ¶¶ 17-18. These local store managers control, for example, the Affiliate drivers' delivery routes, time spent away

11

from the Affiliate location, and time spent engaged in sales duties or management-related work. Id. ¶¶ 17-18.

In sum, defendants contend and present evidence that each Affiliate's manager supervises and controls that Affiliate's delivery drivers. Plaintiff contends and presents evidence that Corporate's employment policies and common employment documentation amounts to supervision and control over the Affiliate delivery drivers. The court must view this conflicting evidence in the light most favorable to the defendants. See Tolan, 134 S. Ct. at 1865; Leslie, 198 F.3d at 1158. Because this factual dispute cuts at the heart of Bonnette's second factor, the court finds that there is a genuine issue of material fact and DENIES plaintiff's motion for summary judgment on this issue.

### b. The Chao Test

Application of the Chao test to the above facts would not change the court's decision. Under Chao, the court looks to whether "1) the employers are not 'completely disassociated' with respect to the employment of the individuals and 2) where one employer is controlled by another or the employers are under common control." Chao, 346 F.3d at 918. Though plaintiff argues to the contrary, the considerations underlying Chao's first prong are similar to those considered under Bonnette's second factor.

As discussed above, in setting forth the horizontal joint employment test, the Ninth Circuit looked to § 791.2(b)(3), which states:

> Where the employers are not completely disassociated with respect to employment of a particular employee and may be <u>deemed to share control of the employee</u>, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

§ 791.2(b)(3) (emphasis added). Thus, to satisfy the Chao test, a plaintiff must still show that the purported joint employer exercises control over the plaintiff-employee. That is the exact issue underlying Bonnette's second factor, for which the court has already determined there exists a genuine issue of material fact.

Though "common ownership" may be relevant when determining whether "common control" exists, the terms are not synonymous. In Chao, for example, in order

12

to determine whether the entities were joint employers of health service employees, the court did not examine the corporate or ownership relationship between the two employers—indeed, in Chao there was no ownership relationship—but instead examined the operational relationship between the two corporations. See Chao, 346 F.3d at 911-914, 916-918. The court described the companies' operations as "closely coordinated," stating that there was "relatively fluid movement of employees between the two companies." Id. at 912-13. This included 1) transferring employees and patients between companies, 2) one corporation's employees supervising the clients, staff, and patients of the other, and 3) sharing administrative support, such as receptionists and offices. Id. at 911-914, 916-918.

Other courts considering the Chao test have examined similar facts indicative of an operational relationship between the purported joint employers. Davidson v. Orange Lake Country Club, Inc., 2008 WL 254136, at *4 (M.D. Fla. Jan.29, 2008) (declining to grant defendant's motion because "there was no distinction between the managers and employees of both companies and that [plaintiff] was supervised by employees from both corporations even though she was only technically an employee for one of the companies); Berrocal v. Moody Petroleum, Inc., No. 07-22549-CIV-UNGARO, 2010 WL 1372410, at *7 (S.D. Fla. Mar. 31, 2010) ("Simply put, although [the companies] were both owned by Mr. Dormoy, and Mr. Dormoy had the final say regarding certain terms of employment with respect to both gas stations, the gas stations functioned separately, with separate managers, in their respective control of Plaintiff's employment."); McKinney v. United Stor-All Centers LLC, 656 F. Supp. 2d 114, 133 (D. D.C. 2009) (triable issue of fact because entities shared officers, employees, a common payroll system, a common human resources department and accounting personnel).

Here, plaintiff's evidence shows at most that that the Affiliates have overlapping ownership and that Corporate dictates certain aspects of the Affiliate delivery drivers employment environment. The evidence does not show that any Affiliate employee also performs work for Corporate or that any Corporate employee—as opposed to the officers

1 and directors—directly supervised Affiliate delivery drivers. In fact, as discussed above,
the only evidence presented on that issue suggests the opposite. Accordingly, the court
would also deny plaintiff's motion under the Chao test, if it applied.[4]

### 3. Collective Action Notice

As discussed at the hearing, the parties may stipulate to a form of notice to the class and submit the form to the court by February 28, 2018. See Dkt. 97. If the parties can agree to the scope of the notice but not the language, competing notices may be submitted from which the court will choose one. Briefing on the issue is not permitted. If the parties cannot agree to the scope of the notice, this issue, like the rest of the case, is stayed pending the Supreme Court's decision in Epic.

### CONCLUSION

For the foregoing reasons, the court DENIES plaintiff's motion for partial summary judgment with respect to the ImageFIRST Affiliate entities. The court hereby terminates plaintiff's motion with respect to the franchisees without prejudice to plaintiff re-noticing the motion on those issues not specifically ruled upon above, after the stay is lifted.[5]

**IT IS SO ORDERED.**

Dated: February 16, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge

---

[4] Plaintiff's § 791.2(b)(2) argument does not point to any additional facts or considerations. The court finds that there are disputed issues of material fact under that theory as well.

[5] Plaintiff lodged five exhibits under seal. Plaintiff did not file a motion to seal or make any other attempt to meet the Ninth Circuit's "compelling reasons" standard. See Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1098 (9th Cir. 2016). Accordingly, those documents may not remain under seal. Those exhibits must be made part of the public record or withdrawn. This order does not cite those exhibits.