UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE L. CAMPANELLI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>IMAGE FIRST HEALTHCARE LAUNDRY SPECIALISTS, INC., et al.,<br><br>　　　　Defendants. | Case No. 15-cv-04456-PJH<br><br>**ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 111 |

Defendants Image First Healthcare Laundry Specialists, Inc. and Image First of California, LLC's (together, "ImageFIRST") motion for partial summary judgment came on for hearing before this court on September 19, 2018. Plaintiff Kyle L. Campanelli appeared through his counsel, Brian Malloy. Defendants appeared through their counsel, Eric Meckley. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS IN PART and DENIES IN PART defendants' motion.

**BACKGROUND**

This is a putative class and collective action based on the Fair Labor Standards Act ("FLSA") and the California Labor Code. ImageFIRST of California employed Campanelli as a delivery person from March 2014 to March 2015. Dkt. 11, First Amended Complaint ("FAC") ¶¶ 2, 4, 33. Plaintiff's primary job duty was to pick up soiled laundry from ImageFIRST customers and deliver it to a laundry center, and to pick up clean laundry from the laundry center and deliver it to ImageFIRST customers. FAC ¶ 33. Campanelli alleges that he worked over forty hours a week but was denied meal

and rest periods, and was never paid overtime compensation. FAC ¶ 36.

Campanelli seeks to represent similarly situated delivery drivers of ImageFIRST entities nationwide in a collective action for failure to pay overtime wages under the FLSA. FAC ¶¶ 4, 37–41.[1] He also seeks to represent a Rule 23 class of similarly situated delivery persons who were misclassified as exempt under California labor laws. FAC ¶¶ 42–51. Both the class and collective action define putative members as "past and present employees of ImageFIRST [entities] who engage/were engaged in the pick-up and delivery of ImageFIRST products to and from health care providers, however that employment was denominated, . . . and who were classified as exempt from" Federal or California overtime laws (the "delivery drivers"). FAC ¶¶ 39, 42.

Critically, the proposed class/collective includes delivery drivers who have signed arbitration agreements. That is not by accident. Though Campanelli is not subject to an arbitration agreement, he nevertheless seeks to represent delivery drivers subject to mandatory arbitration. In fact, defendants have submitted uncontroverted evidence that the vast majority of putative class/collective action members are subject to either a Dispute Resolution Agreement ("DRA")—which contains an explicit arbitration clause and a collective action waiver—or an Employment Agreement—which contains an arbitration provision but is silent on whether arbitration can proceed collectively (together, the "arbitration agreements"). Specifically, the evidence shows that 17 of the 21 putative Rule 23 class members that defendants' affiliated entities employed from September 28, 2011 to July 21, 2018, signed at least one of the two arbitration agreements. Dkt. 111-1, Malandra Decl. ¶ 4; Dkt. 111-2, River Decl. ¶¶ 9, 10.[2] As to the putative FLSA collective

---

[1] "ImageFIRST entities" refers to any entity bearing or using the ImageFIRST mark. As discussed in this court's prior order, plaintiff seeks to represent delivery drivers employed by the named defendants, entities affiliated with the named defendants, and entities that are franchisees of defendant ImageFIRST Health Care Laundry Specialist, Inc. Dkt. 98.

[2] In support of their motion, defendants purportedly submitted in camera every DRA or employment agreement signed by a putative class or collective member. See Rivers Decl. The court did not review those signed agreements. Nor does this order rely on those document. Defendants SHALL arrange for those documents to be picked up from the Clerks Office within 14 days.

2

1 action, of the 214 delivery drivers employed by ImageFIRST affiliated entities operating exclusively outside of California since about June 27, 2015, 187 delivery drivers signed a DRA and 209 signed an employment agreement. Malandra Decl. ¶ 5; Rivers Decl. ¶ 7.[3] Though relevant case law provides no need for the court to reach the issue here, the DRA and Employment Agreement appear likely to be enforceable arbitration agreements.

The present motion, like much of the past two years of this litigation, is directed at determining whether Campanelli, a driver not subject to an arbitration agreement, can represent putative collective/class members who have signed arbitration agreements.

## DISCUSSION

### A. Procedural History

This action's procedural history illustrates how the court has endeavored to ensure plaintiff's action remains manageable while also reaching an efficient and fair outcome. Though the court's efforts ultimately failed, they are nevertheless instructive.

#### 1. Stay Pending Epic

On December 1, 2016, the court set a briefing schedule for plaintiff's motion for class/collective certification, with plaintiff's opening brief due no later than June 14, 2017. Dkt. 55.

On April 18, 2017, Magistrate Judge Sallie Kim resolved a discovery dispute in plaintiff's favor. Dkt. 72-73. As relevant here, Judge Kim overruled defendants' objection that class discovery was inappropriate because no class had yet been certified. Dkt. 72.

Two weeks later, defendants filed two motions. Defendants' first motion sought relief from Judge Kim's order allowing class/collective discovery to proceed. Dkt. 75. Defendants' second motion sought to stay all class/collective action proceedings pending

---

[3] Plaintiff contends that June 27, 2015, is not the pertinent start date for his FLSA claim because his FLSA claim should be tolled to three years prior to plaintiff filing the complaint. As will become evident below, this order does not turn on the number of putative FLSA members subject to an arbitration agreement. And, in any event, plaintiff's proposed FLSA period would add only an additional 12 putative collective members who did not sign an arbitration agreement. Malandra Supp. Decl. ¶ 4.

3

the Supreme Court's decision in <u>Epic Systems Corp. v. Lewis</u>, No. 16-285 ("<u>Epic</u>"), and the cases consolidated with <u>Epic</u>, including the Ninth Circuit's decision in <u>Morris v. Ernst & Young, LLP</u>, 834 F.3d 975 (9th Cir. 2016) ("<u>Morris</u>"). Dkt. 77. In considering defendants' motion to stay the court explained:

> In <u>Epic</u> . . . the Supreme Court will address whether "an agreement that requires an employer and an employee to resolve employment-related disputes through individual arbitration, and waive class and collective proceedings, is enforceable under the Federal Arbitration Act, notwithstanding the provisions of the National Labor Relations Act." <u>See</u> Petition for a Writ of Certiorari, Epic, 2016 WL 4611259 at i, <u>cert. granted</u>, 137 S.Ct. 809 (U.S. Jan. 13, 2017).
>
> The Ninth Circuit held in Morris that general collective action waivers are not enforceable as to employment-related disputes because the National Labor Relations Act ("NLRA") "precludes contracts that foreclose the possibility of concerted work-related legal claims." <u>Morris</u>, 834 F.3d at 990. Thus, "[a]n employer may not condition employment on the requirement that an employee sign" a concerted action waiver. <u>Id.</u> In <u>Epic</u>, the Supreme Court will a resolve a circuit split as to the enforceability of arbitration agreements/concerted action waivers in this context.

Dkt. 88.

In support of their motion to stay, defendants submitted some evidence showing that the majority of the putative class/collective members had signed either the DRA or the Employment Agreement. Dkt. 78. Based on that showing and the issue pending before the Supreme Court, the court concluded it would be inefficient to proceed to the certification stage until the scope of the putative class could be resolved. That required, inter alia, "[a] judicial determination as to . . . whether the alleged arbitration agreements are enforceable, and if so, how many putative class members have signed concerted action waivers." Dkt. 88 at 6.[4] The court recognized that the resolution of those questions might have a "significant impact of the size of the class." <u>Id.</u>

---

[4] The other threshold issue was "whether the employees of non-party ImageFIRST entities are properly part of the putative class." Dkt. 88 at 6. The court denied plaintiff's motion for summary judgment on that issue with respect to the ImageFirst affiliated entities and, by agreement with the parties, deferred ruling on the issue with respect to ImageFIRST franchisees. Dkt. 98.

4

The former question depended on the Supreme Court's decision in Epic. Under the then-applicable rule of Morris, the arbitration agreements could not alter the scope of the class because the class/collective waivers rendered the agreements unenforceable. However, "[i]f the Supreme Court ultimately overturn[ed] Morris and conclude[d] that these types of agreements are enforceable," then the court envisioned providing defendants an opportunity to move for summary judgment to address the second question: how many putative class members are precluded by contract from participating in the class/collective? Id. Accordingly, with a limited exception, the court stayed the case pending the Supreme Court's decision in Epic.[5] See also, e.g., McElrath v. Uber Techs., Inc., No. 16-CV-07241-JSC, 2017 WL 1175591, at *5–*7 (N.D. Cal. Mar. 30, 2017) (granting stay because "whether this case can proceed as a class action turns squarely on the outcome of the Supreme Court's review of Morris"); Hughes v. S.A.W. Entm't, LTD, No. 16-CV-03371-LB, 2017 WL 6450485, at *2 (N.D. Cal. Dec. 18, 2017).

The court's focus on determining the potential scope of the eligible class members was grounded in manageability and efficiency-related concerns. The court reasoned that it made no sense to certify a class/collective action that included arbitration-signing class/collective members only for those individuals to be compelled to arbitrate individually if Epic overturned Morris. Indeed, based on those same concerns, courts have frequently refused to send notice to arbitration-signing putative plaintiffs or have refused to certify class/collective actions that include arbitration-signing putative plaintiffs. See, e.g., Morangelli v. Chemed Corp., 2010 U.S. Dist. LEXIS 146149, at *13 (E.D.N.Y. June 15, 2010) ("It would be a disservice to judicial efficiency to certify all technicians, when those with arbitration agreements are subject to additional, prolonging [sic] motion practice which will likely disqualify them from the class.").[6] Similarly, district courts have

---

[5] Because class and collective discovery was stayed pending Epic, the court also denied defendants' objections to Judge Kim's discovery order as moot.

[6] See also Daugherty v. Encana Oil & Gas (USA), Inc., 838 F. Supp. 2d 1127, 1130 (D. Colo. 2011) (carving out putative collective members who signed arbitration provision); Hudgins v. Total Quality Logistics, LLC, No. 16 C 7331, 2017 WL 514191, at *4 (N.D. Ill.

5

recognized the manageability issues that accompany certification of nationwide classes/collectives that include putative class/collective members who are, unlike the named plaintiff(s), subject to enforceable arbitration agreements. See, e.g., Saravia v. Dynamex, Inc., 310 F.R.D. 412, 425 (N.D. Cal. 2015) (limiting scope of collective action to California to ensure the court could address the arbitration-related issues on a collective basis).[7] And others have attempted to avoid the above issues by providing plaintiff leave to add a plaintiff subject to an arbitration agreement; thus ensuring that arbitration-related issues are decided prior to certification. See Pang v. Samsung Elecs. Am., Inc., No. 18-CV-01882-PJH, 2018 WL 4491154, at *1 (N.D. Cal. Sept. 19, 2018).

In short, this court, like many courts before it, determined that if the DRA and the Employment Agreements were enforceable, then it made no sense to certify a class/collective action that included hundreds of plaintiffs who are contractually prohibited from participating in this action.

### 2. **Epic**

In May 2018, the Supreme Court issued its decision in Epic and left no doubt that the "Federal Arbitration Act [the "FAA"] . . . instruct[s] federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1619 (2018). The Supreme Court explained that the FAA's "saving clause recognizes only defenses that apply to 'any' contract" and "offers no refuge for defenses that apply only to arbitration." Id. at 1622 (internal quotation mark omitted). That includes "defenses that target arbitration . . . by 'interfer[ing] with fundamental attributes of arbitration," one of which is the individualized nature of arbitration. Id. at 1622-23. That reasoning does not come as a

---

Feb. 8, 2017) (carving out arbitration signing putative collective members because "It does not make sense to notify so many people about a lawsuit that they almost certainly are unable to join; this would constitute a waste of resources and would risk misleading those individuals into thinking they will be able to join the lawsuit."); Fischer v. Kmart Corp., No. CIV. 13-4116, 2014 WL 3817368, at *7 (D.N.J. Aug. 4, 2014) (same).

[7] Conde v. Open Door Mktg., LLC, 223 F. Supp. 3d 949, 969 & n.7 (N.D. Cal. 2017) (same).

6

1 surprise, as it matches the Supreme Court's jurisprudence for at least the better part of
2 the last decade. See Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 559 U.S. 662
3 (2010) (because parties did not agree to class arbitration, it could not be substituted for
4 individualized arbitration proceedings); AT&T Mobility LLC v. Concepcion, 563 U.S. 333
5 (2011) (FAA preempted California Supreme Court rule that "condition[ed] the
6 enforceability of certain arbitration agreements on the availability of classwide arbitration
7 procedures"); Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228 (2013) (contractual
8 waiver of class arbitration enforceable even when a plaintiff's cost of arbitrating
9 individually exceeds the potential recovery).

Faced with the Supreme Court's clear ruling that collective action waivers must be enforced as written, the court set a briefing schedule for the present motion, which was set to address "whether certain putative class members are precluded by contract from participating in the class/collective action." Dkt. 106 at 2; Dkt. 108. The court explained that "the court needs to know who can be a part of the class/collective action before plaintiff" moves for class/collective certification and before notice can be sent to putative class/collective members. Dkt. 108 at 1 (emphasis omitted).

### 3. Defendants' Present Motion for Summary Judgment

On July 26, 2018, defendants filed their motion for partial summary judgment. In short, that motion argued that the DRAs and the Employment Agreements are valid and enforceable contracts that prohibit signatories from participating in this action because the agreements contain valid arbitration clauses and because the agreements either include collective/class action waivers or do not explicitly provide for collective arbitration. Dkt. 119 at 1; Dkt 111. For those reasons, defendants requested that the court "rule that all individuals who signed" at least one of the two agreements "be precluded from participating in any way in this litigation[.]" Dkt. 111 at 22:1-4. Plaintiff responded with arguments essentially aimed at the court delaying any decision about the enforceability of the arbitration agreements until after FLSA certification. Dkt. 114. The parties completed briefing on September 6, 2018, and the court held a hearing on September 19, 2018.

During that hearing, the court expressed concerns about, inter alia, the relief defendants' motion sought and the basis for that relief. In response, defendants "clarified that the motion is based on an affirmative defense." Dkt. 119. In a subsequent September 20, 2018 order, the court explained:

> [D]efendants' thirty-fourth "affirmative defense" states that certain putative class/collective action members are subject to individual arbitration agreements and that those individuals' claims may not be adjudicated in this action. Dkt. 23 at 21. Even if that were a proper affirmative defense, which the court expresses no opinion about, it is an affirmative defense against individuals who are neither present nor parties to this action.
>
> That said, the court understands defendants' motion, however it is captioned, as a challenge to the definition and scope of plaintiff's proposed class/collective action. . . . [Specifically,] according to defendants, plaintiff's class/collective definition is too broad because the class/collective definition should, but does not, exclude past and present employees who have signed arbitration agreements.

Dkt. 119 at 1-2.

In consideration of efficiency and the underlying purpose of defendants' motion, the court ordered supplemental briefing on two related topics: "(1) Whether the court should construe defendants' motion as a motion to deny class/collective certification[;] and (2) Whether such a motion should be granted or denied under the relevant standards." Dkt. 119 at 2 (internal citations omitted).

In conjunction with the first issue, the court directed the parties to Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 939 (9th Cir. 2009) and Till v. Saks Inc., No. C 11-00504 SBA, 2013 WL 5755671, at *8 (N.D. Cal. Sept. 30, 2013). In Vinole, the Ninth Circuit explicitly considered whether a defendant could file a "preemptive" motion to deny Rule 23 class certification. Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 939 (9th Cir. 2009). Vinole concluded that so long as the district court afforded litigants the opportunity to conduct discovery relevant to the maintainability of a class action, a "defendant may move to deny class certification before a plaintiff files a motion to certify a class." Id. at 941-42. In Saks, the court relied on Vinole and granted defendants' preemptive motion to deny FLSA certification. Till v. Saks Inc., No. C 11-00504 SBA,

8

2013 WL 5755671, at *9 (N.D. Cal. Sept. 30, 2013).

The parties completed their supplemental briefing on October 8, 2018. Unsurprisingly, defendants argued that the court could construe the motion as a motion to deny class/collective certification and plaintiff argued that doing so would be inappropriate and prejudicial because relevant class/collective discovery had not yet occurred. Regarding the FLSA collective action, which is the heart of the dispute in this case, the parties' supplemental briefs agreed that district courts frequently apply a two-step approach to determine whether certification is appropriate. Unfortunately, the parties also (apparently) agreed to ignore the Ninth Circuit's recent opinion that changed the face of FLSA certification, Campbell v. City of Los Angeles, 903 F.3d 1090, 1099 (9th Cir. 2018).

**B.     Legal Standard**

**1.     Certification Under the FLSA**

An employee may bring an FLSA collective action on behalf of himself/herself and other employees who are "similarly situated" and who have filed written consents to join the action. 29 U.S.C. § 216(b); see Valladon v. City of Oakland, 2009 WL 2591346 at *7 (N.D. Cal. Aug. 21, 2009). The FLSA does not define the term "similarly situated" and, before the Ninth Circuit's Campbell decision, neither the Ninth Circuit nor the Supreme Court had defined the term. In Hoffmann–La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989), the Supreme Court indicated that a proper collective action will address in a single proceeding claims of multiple plaintiffs who share "common issues of law and fact arising from the same alleged prohibited activity."

Prior to Campbell, district courts in the Ninth Circuit had adopted a two-stage approach for determining whether putative collective action plaintiffs are "similarly situated." See, e.g., Adedapoidle–Tyehimba v. Crunch, LLC, 2013 WL 4082137 at *6 (N.D.Cal. Aug. 9, 2013). At the first stage, "the question [was] essentially whether there are potentially similarly-situated class members who would benefit from receiving notice at this stage of the pendency of" the action. Shaia v. Harvest Mgmt. Sub LLC, 306

9

F.R.D. 268, 272 (N.D. Cal. 2015). At the second stage, usually in response to a motion for decertification, districts courts in this Circuit would usually employ what was termed the "ad hoc" test. That test involved the consideration of "several factors, including disparate factual and employment settings of the individual plaintiffs; the various defenses available to the defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether the plaintiffs made any required filings before instituting suit." Id.; Campbell, 903 F.3d at 1113 (discussing ad hoc approach).

On September 13, 2018, seven days before this court requested supplemental briefing, the Ninth Circuit issued a lengthy opinion endorsing the two-stage approach. Campbell, 903 F.3d at 1110. Campbell, however, emphatically rejected the district courts' prior application of the term "similarly situated," which is naturally what both stages turn on. Id. at 1111 ("'similarly situated' is the key condition for proceeding in a collective, and thus the issue on which a grant or denial of decertification generally depends")

Campbell recognized that lacking an established definition of "similarly situated," district courts had taken one of two approaches to the "similarly situated" requirement. Id. at 1111. The first, which no circuit court has adopted in toto, imports Rule 23(b)(3)'s requirements. Id. at 1111. The second is the ad hoc test described above. Id. at 1113-16. While Campbell found the ad hoc approach a significant improvement over the Rule 23-based FLSA test, Campbell nevertheless rejected that test as well for two reasons.

First, the ad hoc test fails to instruct on "what kinds of 'similarity' matter under the FLSA." Id. (emphasis in original). Campbell explained that the test tends to "explain what the term 'similarly situated' does not mean—not what it does." Id. at 1114. In addition, the test's "focus on differences rather than similarities among" the plaintiff and putative plaintiffs can lead "district courts into an approach that treats difference as disqualifying, rather than one that treats . . . similarity" as the key. Id. at 1117; see also id. at 1113.

10

Instead, Campbell explained that the appropriate inquiry is whether the named plaintiff and putative plaintiffs are "alike with regard to some <u>material</u> aspect of their litigation." Id. at 1114. The pertinent type of similarity is one that that "allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." Id. (ellipses in original). "What matters is not just <u>any</u> similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution." Id. at 1115.

The ad hoc test's second flaw lies in its "fairness and procedural consideration prong." Id. Campbell explained that that prong improperly "invites courts to import . . . requirements with no application to the FLSA[,]" such as Rule 23(b)(3)'s adequacy, superiority, or predominance requirements. Id. Those factors are inappropriate in the FLSA context because the FLSA "does not give district courts discretion to reject collectives that meet the statute's few, enumerated requirements." Id. Accordingly, Campbell explained, "decertification of a collective action of otherwise similarly situated plaintiffs cannot be permitted unless the collective mechanism is truly infeasible." Id.

Read as a whole, Campbell requires a much lower showing than the two-step approach district courts previously employed. Under Campbell, the named plaintiff and putative plaintiffs are "similarly situated" when "they share a similar issue of law or fact material to the disposition of their FLSA claim." Campbell, 903 F.3d at 1117. If plaintiff makes a plausible showing that such a similarity exists, the district court should grant first-stage certification. Id. at 1109-10 (endorsing "plausibility standard" for first-stage certification). Importantly, Campbell specifically eschewed the practical considerations of manageability or efficiency that permeated prior district court FLSA certification jurisprudence. Instead, the district court may take into account those considerations only at the second-stage, and even then, those considerations only support decertification when the collective mechanism is "truly infeasible." Id. at 1117. (a district court "cannot reject party plaintiffs' choice to proceed collectively based on its perception of likely

11

inconvenience.").

### 2. Rule 23 Class Certification

The party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rule 23(a) and at least one of the three requirements under Rule 23(b) are met. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350-51 (2011). Under Rule 23(a), a district court may certify a class only if it meets the requirements of numerosity, commonality, typicality, and adequacy of representation. Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th Cir. 2012); Fed. R. Civ. P. 23(a). The purpose of these requirements is to "ensure [ ] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," and to "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." Dukes, 564 U.S. at 349 (internal quotation marks omitted). Class certification is proper only if the trial court has concluded, after a "rigorous analysis," that Rule 23(a) has been satisfied. Id. at 350-51.

If all four prerequisites of Rule 23(a) are satisfied, the court then determines whether to certify the class under one of the three subsections of Rule 23(b), pursuant to which the named plaintiffs must establish either (1) that there is a risk of substantial prejudice from separate actions; or (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact common to the class predominate and that a class action is superior to other methods available for adjudicating the controversy at issue. See Fed. R. Civ. P. 23(b)(3).

**C. Analysis**

### 1. The Court GRANTS Defendants' Motion To Deny Rule 23.

Though plaintiff is not subject to an arbitration agreement, he seeks to represent a Rule 23 class that includes drivers who are subject to arbitration agreements. The Ninth Circuit has foreclosed the viability of that proposition.

In Avilez v. Pinkerton Government Services, Inc., 596 Fed. Appx. 579, (9th Cir. 2015), the named plaintiff's arbitration agreement did not contain a class action waiver,

12

1    but the district court nevertheless certified classes and subclasses that included
2    employees who had signed class action waivers. Id. at 579. The Ninth Circuit held that
3    the district court abused its discretion in certifying those classes and subclasses because
4    "those who signed such waivers have potential defenses that [the named plaintiff] would
5    be unable to argue on their behalf." Id. Thus, the Ninth Circuit concluded, the named
6    plaintiff was "not an adequate representative, Fed. R. Civ. P. 23(a)(4), and her claim
7    lack[ed] typicality, Fed. R. Civ. P. 23(a)(3)." Id.; see also Tschudy v. J.C. Penney Corp.,
8    Inc., No. 11CV1011 JM (KSC), 2015 WL 8484530, at *3 (S.D. Cal. Dec. 9, 2015) (relying
9    on Avilez to decertify class with respect to employees who signed arbitration
10   agreements); Tan v. Grubhub, Inc., No. 15-CV-05128-JSC, 2016 WL 4721439, at *3
11   (N.D. Cal. July 19, 2016) (granting motion to deny class certification; collecting cases);
12   Conde, 223 F. Supp. 3d at 958-63 (same with respect to putative class members who are
13   "possibly bound" by arbitration agreements).
14       The same is true here. Campanelli is neither subject to an arbitration clause nor a
15   class/collective action waiver. Thus, he is not an adequate representative and his claims
16   lack typicality with respect to putative Rule 23 plaintiffs who have signed the DRA or the
17   Employment Agreement.
18       Indeed, the opposite rule makes little sense. Plaintiff's rule would allow a named
19   plaintiff not subject to an enforceable arbitration agreement to certify a Rule 23 class that
20   included class members subject to arbitration agreements. Conversely, a named plaintiff
21   subject to an enforceable arbitration agreement would be unable to certify the same Rule
22   23 class (because she would be compelled to arbitrate before the certification stage).
23   The court will not endorse such an unintuitive result. And the Ninth Circuit has recently
24   rejected a similar result in O'Connor v. Uber Techs., Inc., 904 F.3d 1087, 1093-94 (9th
25   Cir. 2018). There, the Ninth Circuit rejected plaintiff's argument that a named plaintiff that
26   had opted out of arbitration could represent a Rule 23 class that included putative class
27   members who were subject to a presumably enforceable arbitration clause. O'Connor v.
28

1 Uber Techs., Inc., 904 F.3d 1087, 1093-94 (9th Cir. 2018).[8]

2 Plaintiff contends that (i) the arbitration agreements are unenforceable and (ii) that plaintiff has not had the opportunity to conduct class discovery. Avilez implicitly moots both of those arguments. First, Avilez found no cause to determine whether the arbitration agreements at issue were actually enforceable. Instead, it was enough that the named plaintiff had not signed a class action waiver and the putative class members he sought to represent had signed such an agreement. Other courts have similarly denied Rule 23 certification without delving into the enforceability of arbitration agreements that the named plaintiff is not a party to. See Conde, 223 F. Supp. 3d at 960, 963; Tan, 2016 WL 4721439, at *3.

Second, plaintiff has not identified what additional discovery is pertinent to the present motion to deny class certification. True, "discovery relating to the issue [of] whether a class action is appropriate needs to be undertaken before" deciding a Rule 23 certification motion. § 1785.3 Timing of Certification, 7AA Fed. Prac. & Proc. Civ. § 1785.3 (3d ed.) (collecting cases). But "the mere allegation that more discovery is desire[d] will not preclude a ruling on class certification [ ]. The court will delay its ruling only if it finds that discovery would be useful or is necessary in making that determination." Id. That is the same general proposition that Vinole stands for in the motion to deny certification posture.

Critically, the present motion to deny Rule 23 certification is premised solely on two facts: (1) the named plaintiff has not signed an arbitration agreement and (2) putative class members have signed arbitration agreements. In a similar circumstance, Avilez held that the class definition should be narrowed to exclude putative class members who have signed class action waivers. Avilez found it unnecessary to determine whether the

---

[8] Citing Bickerstaff v. Suntrust Bank, 299 Ga. 459, 788 (2016), plaintiff also argues that by "not signing the arbitration agreement, plaintiff is deemed to have opted-out of the arbitration clauses on behalf of the collective[.]" Opp. at 21. O'Connor explicitly rejected that argument. O'Connor, 904 F.3d at 1093-94; Magana v. DoorDash, Inc., No. 18-CV-03395-PJH, 2018 WL 5291988, at *3 (N.D. Cal. Oct. 22, 2018).

14

1 arbitration agreements were enforceable, much less engage in a fact-specific inquiry
2 about the circumstances under which each putative class member signed the agreement.
3 The court holds the same here.

4 Accordingly, the court GRANTS defendants' motion to deny class certification
5 based on the currently defined class because the named plaintiff is not an adequate
6 representative and his claims lack typicality with respect to putative Rule 23 plaintiffs who
7 have signed the DRA or the Employment Agreement.

### 2. The Court DENIES Defendants' Motion to Deny FLSA Certification.

As outlined above, under the old two-step FLSA certification process, courts looked to whether the FLSA named plaintiff and the putative plaintiffs were "similarly situated." However, the previously employed ad hoc test "focus[ed] on points of potential factual or legal <u>dissimilarity</u>" between the named plaintiff and the putative plaintiffs, as well as "fairness and procedural considerations." <u>Campbell</u>, 903 F.3d at 1113. It was with those considerations in mind that this court sequenced defendants' motion for summary judgment before plaintiff's motion for FLSA certification.

Under <u>Campbell</u>, those practical considerations no longer hold any weight. Instead, <u>Campbell</u> requires that the named plaintiff be afforded the opportunity to show that the named plaintiff shares a material similarity with the putative collective members. If so, district courts must certify plaintiff's collective action and order notice to be sent to putative collective members. <u>Campbell</u> requires that result regardless of whether the putative collective members are contractually prohibited from joining the collective or contractually required to arbitrate individually. In other words, <u>Campbell</u> extinguished the practical considerations underlying this court's prior scheduling orders and the present motion.

As to the present motion, <u>Campbell</u> makes clear that even though the vast majority of this action's putative plaintiffs appear to be subject to an enforceable arbitration agreement, this court may not preemptively deny FLSA certification or narrow the scope of the proposed collective. As discussed, the court must first allow plaintiff to seek FLSA

15

certification and, if appropriate, order notice to be sent to all putative FLSA collective action members. Only after the FLSA plaintiffs join this action, may the court entertain defendants' arbitration-related motions seeking to compel opt-in plaintiffs to arbitrate or to prohibit plaintiffs from proceeding collectively. While that sequencing strikes this court as highly inefficient, it is what Campbell demands.

Accordingly, with respect to the FLSA collective action, defendants' motion for summary judgment—or motion to deny FLSA certification—is DENIED without prejudice. Plaintiff shall file his motion for conditional certification, which shall include plaintiff's tolling-related arguments, by January 23, 2019.

**CONCLUSION**

For the foregoing reasons, defendants' motion is GRANTED IN PART and DENIED IN PART. The court GRANTS defendants' motion to deny Rule 23 certification and DENIES defendants' motion in all other respects.

**IT IS SO ORDERED.**

Dated: December 21, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge